IVORY et al. v. KENNEDY et al.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1893.)

HOMESTEAD—DEED OF TRUST—FORECLOSURE—SUBROGATION.

Deeds of trust by two grantors and their wives, representing them-selves as one family, and claiming but one homestead, were made to secure a loan, a portion of which was used to pay off vendors' liens on a specific part of the lands. Subsequently the widow of one of the grantors claimed a right of homestead. in such part under Const. Tex. 1876, art. 16, § 50. *Held*, that the mortgagee was subrogated to the right of the holders of the vendors' liens as to such specific part, and on fore-closure was entitled to sell the whole tract, except the two homesteads, and, if sufficient was not realized to satisfy the mortgage debt, then to sell the homestead claimed by the widow, to satisfy so much of the de-cree as should not exceed the sum used to pay off such vendors' liens. McCormick, Circuit Judge, dissenting. Pridgen v. Warn, 15 S. W. Rep. 559, 79 Tex. 588, followed.

Appeal from the Circuit Court of the United States for the East-ern District of Texas. Decree amended and affirmed.

Statement by PARDEE, Circuit Judge:

This bill was brought by Holmes Ivory, complainant, appellant here, and A. S. Caldwell, Bolton Smith, and J. M. Judah, nominal complainants, in the circuit court of the United States for the eastern district of Texas, at Gal-veston, against Walter Kennedy, for himself, and as surviving partner of the firm of Walker & Kennedy, and as independent executor of the last will and testament of John F. Walker, deceased, and against Sarah M. Kennedy, wife of Walter Kennedy, and Serena K. Walker, widow of John F. Walker, for herself, and as independent executrix of the last will and testament of John F. Walker, and against Mrs. M. W. Kennedy; James Bute, Henry Mayer, Jacob Kahn, and Henry Freiberg, doing business under firm name of Mayer, Kahn & Freiberg; C. W. Alsworth; D. F. Rowe; Gus Lewy and A. Uedeman, doing business under the name of Gus Lewy & Co.,—to foreclose two deeds of trust held by the complainant, Ivory, and made by the defendants Walter Kennedy and John F. Walker, Sarah M. Kennedy and Serena K. Walker, their wives, in which deeds of trust Caldwell, Smith, and Judah, nominal plaintiffs, were trustees. All of the other defendants were charged with having some interest in the mortgaged property, which interest was subordinate to that of com-plainant. It was substantially charged in the original and amended bill that defendants Kennedy and Walker and their respective wives mortgaged to complainant 3,389 acres of land to secure the payment of $20,000 and interest according to the first deed of trust, and $10,000 and interest according to the second deed of trust. The 3,389 acres of land are described by metes and bounds, and lie in a body in Brazoria county, Tex.

The first deed of trust recites that the entire purchase money for 2,186 acres of the land described in plaintiff's bill was paid by the plaintiff for the defendants Kennedy and Walker, and that as to the remainder of the land certain vendors' liens and judgments on it were. paid with the remainder of the money borrowed from the complainant after paying the purchase price for the 2,186 acres, and that complainant, having advanced the money to take up valid and subsisting liens on the land, among others, purchase-money notes, was entitled to be subrogated to the equities of the holders of the unpaid purchase-money notes at least, which at the hearing amounted to $6,558.70, as against any claims of homestead set up. by the defendants Kennedy and Walker, except the original homestead of 200 acres. From the operation of the deeds of trust was excepted the original 200 acres of land, with the buildings, which Kennedy and Walker had designated as their home-stead,—they being brothers-in-law, living together as one family. The de-fendants Gus Lewy and A. Uedeman were dismissed, the defendant James Bute disclaimed, Mayer, Kahn & Freiberg appeared and answered, defend-

an*t* Alsworth appeared and answered, D. F. Rowe did not answer. All of these defendants who answered claimed judgment liens or other liens on the property described in complainant's deeds of trust and bill of complaint; and the court held that the liens of all these defendants were subordinate to that of complainant.

No exception is taken by either complainant or defendants to the judgment of the court in regard to these defendants. The defendants Walter Kennedy and Serena K. Walker, for themselves, and as independent executors of the will of John F. Walker, deceased, and Sarah M. Kennedy, for herself, answered jointly, admitting the execution of the deeds of trust and notes, and that they owned the land when the deeds of trust and notes were executed, and claiming one homestead of 200 acres, which is the homestead designated and expressly excepted in said deeds of trust, and which was in bill of complaint alleged to be omitted from the deeds of trust, but claiming also an additional homestead of 200 acres, not then designated, out of the land included in the deeds of trust, alleging that Kennedy and Walker each were the head of a family, and each entitled to 200 acres of land, and they alleged that complainant had expressly waived any right he might have as the assignee and holder of the original unpaid money notes. A subsequent and amended answer was filed, designating by metes and bounds the additional 200 acres claimed as the additional homestead. There is an agreed statement of facts and other evidence in the record which warranted a decree in favor of the complainant, recognizing his lien, under the deeds of trust on the whole property, for $36,504.24, subject to the homestead of the defendant Kennedy, excepted and reserved in the deeds of trust, and also subject to the homestead claimed and designated by Serena K. Walker, and recognizing a vendor's lien in favor of complainant for $6,558.70 out of the said $36,504.24 on the 1,203 acres known as the "Waverly Place," subject only to the Kennedy homestead, as designated in the deeds of trust.

There was also evidence showing that in the applications made by the said Kennedy and Walker for the loans of the several sums, and describing the security offered, the said Kennedy and Walker declared that they constituted only one family, occupying only one residence; and the deeds of trust recited "that the therein-described property was not their homestead, nor claimed, used, or enjoyed by them as such, and that they have other property which they occupy and claim as such;" and that, after the execution of the original deed of trust to secure $20,000, and prior to the advance and loan, the said Walter Kennedy, Sarah F. Kennedy, John F. Walker, and Serena K. Walker, in order to induce the complainant to advance and loan his money upon the security aforesaid, made and presented to complainant an affidavit in which, after reciting the negotiations regarding the loan, it was further recited as follows: "Whereas, the said Holmes Ivory is unwilling that the money arising from said loan and now in the hands of Francis Smith and Caldwell & Co. be paid to said Walter Kennedy and John F. Walker until the homestead rights of the said Walter Kennedy and wife and of said John F. Walker and wife in the said premises are clearly defined: Now, therefore, to facilitate the speedy closing of the said loan, and to induce and secure the payment of the said money on said loan, we, Walter Kennedy and Sarah M. Kennedy, his wife, and John F. Walker and Serena K. Walker, his wife, do hereby declare under oath that the said Serena K. Walker is the sister of Walter Kennedy; that the affiants all live together as one family on the tract of land of 200 acres known as the 'Old Kennedy Homestead,' situated in Richardson league, in said Brazoria county, Texas, particularly described as follows: * * * and that we, and each of us, use and occupy the said 200 acres as our homestead, and that we do not in any wise use or claim any other land as our homestead."

On the hearing the court rendered a final decree, in substance as follows: Giving judgment for the complainant against the defendants Walter Kennedy, for himself, and as independent executor of John F. Walker, deceased, and Serena K. Walker, as independent executrix of John F. Walker, deceased, for the sum of $36,504.24, being the principal and interest secured by both deeds of trust. The decree then goes on and provides for judgment for such other of the defendants who appeared and answered and proved claims against Kennedy and Walker for the amount of their respective claims, classi-

fies their liens, and subordinates them to complainant's and divests title to the lands out of the nominal plaintiffs, Caldwell, Smith, and Judah, and apportions the costs between the different parties. Paragraph 11 declares that the complainant has a valid and subsisting first lien on the lands and premises described in his bill of complaint for the sum of $36,504.24, and interest until paid at the rate of 12 per cent. per annum, except as to 200 acres of said land, which is hereby adjudged the homestead of the defendant Walter Kennedy, and 200 acres here adjudged the homestead of Serena K. Walker. Paragraph 12 decrees that the deeds of trust be foreclosed as to all the parties to the suit; that J. J. Dickerson be appointed to make the sale; commands him to seize and sell the lands, and apply the proceeds of sale to the satisfaction of plaintiff's judgment, and the balance remaining, if any, to be paid into the registry of the court, to be distributed among the other defendants as their equities may appear. The decree then goes on describing the land as described in complainant's deeds of trust and bill of complaint, and excepts from the operation of the decree 200 acres of land described in a designation of homestead by the defendants Kennedy and Walker,—the original homestead, about which there is no question. It also excepts 200 acres of land designated by Serena K. Walker as her homestead, "and by this judgment set apart to her, subject to the vendor's lien for $6,558.70 and interest, as hereinafter limited." The last paragraph in the decree is as follows: "Said sale shall be made in the following manner: The said J. J. Dickerson shall first sell all of said property to satisfy said judgment, except the Waverly place, of which the two homesteads above described are a part, and which said Waverly place is described as follows: Beginning at the southwest corner of a tract of land sold to W. J. Hutchings off the east end of said Waverly plantation; thence north along the west line of said Hutchings tract to the south line of the Drayton place; thence west along said south line to the Brazos river; thence with the meanders of the river to the south line of the Waverly plantation as owned by Mary W. Kennedy and Wm. Kennedy, trustee of Mary W. Kennedy, in May, 1876; thence along said south line to the beginning,—being the same tract of land sold to Kennedy and Walker by Ball, Hutchings, John Sealy and Geo. Sealy by deed dated Nov. 21, 1881, recorded in Book V, pages 698 and 699, Brazoria Co. Records. Should plaintiff's said debt not be satisfied by said sale, the said Dickerson shall then sell the Waverly place, less the homestead above described, to satisfy so much of the balance of said judgment as shall not exceed the said sum of $6,558.70 and interest; and if, after the sale of said Waverly place, less said homestead, there shall remain a balance unrealized of the $6,558.70 and interest, then the said Dickerson shall sell the Serena K. Walker homestead to satisfy said balance, and, if said sale of said homestead shall realize more than such unpaid balance of $6,558.70 and interest, then the said Dickerson shall pay to the defendant Serena K. Walker the amount of such excess. And plaintiff Holmes Ivory excepts to said decree for the reasons set forth in his assignment of errors, and asks leave to appeal herefrom to the United States circuit court of appeals, which application is hereby by the honorable trial judge granted, and leave given to appeal herefrom."

The complainant perfected his appeal, assigning errors as follows: "(1) The court erred in its final decree in this: that plaintiff is by said final decree compelled to sell the Waverly plantation to satisfy the debts secured by the vendor's lien, and no other debt, whereas the plaintiff's mortgage covers said Waverly plantation in addition to other lands, and is for a larger amount than the amount secured by the vendor's lien. (2) The court erred in its final decree in this: that said decree should have ordered all of said property sold, less the homesteads of 200 acres each, to satisfy plaintiff's debt, and in the event said property failed to bring the amount of said debt, then that the homestead of Serena K. Walker, which is a part of the Waverly plantation, and subject to the vendor's lien, should have been sold to satisfy the balance remaining due, provided said 200 acres should not in any event be sold for an amount greater than the sum due on the vendor's lien."

H. P. Drought, for appellant.
F. D. Minor, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and TOUL-MIN, District Judge.

PARDEE, Circuit Judge, (after stating·the case,) delivered the opinion of the court.

The first error assigned is well taken. Complainant's mortgage for the entire·amount includes the 1,203 acres known as the "Waverly Place" (except the Kennedy homestead) as well as the balance of the tract, and the complainant is clearly entitled to a decree of foreclosure and sale of the tract as a whole, the only exemptions therefrom allowable being the two tracts of 200 acres each claimed respectively by Walter Kennedy and Serena K. Walker as homesteads; the one because excepted in the deeds of trust, the other because exempted under the constitution and laws of Texas.

The second assignment of error presents more difficulty. The case is shortly this: Complainant has a mortgage on the whole tract, less the Kennedy homestead. He has a vendor's lien on the 1,203 acres known as the "Waverly Place" (except the Kennedy homestead) for a part of his entire claim. Mrs. Walker is entitled to claim and have exempted out of the 1,203 acres her designated homestead of 200 acres as against the complainant's general mortgage, but not as against complainant's vendor's lien. The instructions as given in the decree are evidently inequitable, for under them the mortgagee is not only compelled to resort to the several parts of the undivided whole, but to do it in such a manner as to compel him to pay for what he has already paid for, or lose his debt; for, under the said instructions, any amount complainant should bid for the Waverly place over and above the $6,558.70 must be paid to some one else, for complainant is allowed to have it sold for that sum only; and in the event that sum is bid the homestead goes to Mrs. Walker without being paid for.

The constitution of the state of Texas (article 16, § 50) is as follows:

"The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust deed, or other lien shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

The power of a court of equity to compel the mortgagee to resort in the first instance to one of the several estates mortgaged is generally exercised only for the protection of the equities of different creditors or incumbrancers, or of sureties, and not for the benefit of the mortgagor. Story, Eq. Jur. § 640; Pom. Eq. Jur. §

1414. In the case of Searle v. Chapman, 121 Mass. 19, Mr. Chief Justice Gray (now Mr. Justice Gray of the supreme court of the United States) delivering the opinion of the court, the above rule was laid down, and the court held that the owner of the homestead could not compel the marshaling of securities so as to favor his homestead right, and the court said:

"The right of homestead created by our statutes is certainly entitled to no higher degree of favor than the courts have always accorded the common-law right of dower. The case cannot be distinguished in principle from the ordinary one in which a wife, who has joined by way of releasing dower in the mortgage of her husband, is held to pay the whole mortgage debt as a condition of asserting her right of dower against the mortgagee. Gibson v. Crehore, 5 Pick. 146–152; McCabe v. Bellows, 7 Gray, 148, 1 Allen, 269; Davis v. Wetherell, 13 Allen, 60. The judgment in Pittman's Appeal, 48 Pa. St. 315, is in accordance with our conclusion. The cases in some of the western states, cited by the learned counsel for the tenants, so far as they countenance any equity in the owner of the right of homestead as against the party in whose favor he has waived or released it, are supported by no reasons, and do not disclose how far they may have been influenced by local statutes."

The appellant contends that the decree in question "should have instructed Dickerson to sell the land, less the homesteads, to satisfy the plaintiff's debt, and in the event the debt should remain unsatisfied after the sale, that the additional homestead of 200 acres set apart to Serena K. Walker, subject to the lien of $6,558.70, should be sold to satisfy what remained unrealized, provided it should not be sold in any event to satisfy an amount more than $6,558.70, which was the amount of the unpaid purchase-money notes,—the amount the decree found it subject to;" and he relies upon the case of Pridgen v. Warn, 79 Tex. 588, 15 S. W. Rep. 559, which is a case almost identical with the present one. In that case Warn claimed a lien upon 408 acres of land bought by Pridgen of Thomas. The tract included 100 acres claimed by Pridgen as a homestead. Pridgen bought the land on credit, and executed purchase notes for it. Some of the notes came due, and Pridgen borrowed a sum of money from Warn to pay them, and for other purposes. This sum was in excess of the purchase notes, and Warn took a deed of trust on all the land to secure the total sum advanced. The supreme court of Texas held on appeal that Warn was subrogated to the rights of the vendor to the extent of the second note which he had taken up against the 100 acres in the homestead, and the court decreed as follows:

"The land found subject to Warn's mortgage will first be sold for the payment of his debt, and, should any balance of his debt remain, then the 100 acres found subject to the vendor's lien shall be sold for the payment of such balance; but the amount to be applied from the proceeds of such sale shall in no case exceed the amount of the second note paid off by him as determined in the judgment."

We find no other Texas adjudication on this question. The cases in point from other states are conflicting, and those found holding that a creditor with security is compelled to divide his security in favor of a homestead—the homestead being under the law liable to be sold for the payment of the debt—are, as intimated by Mr.

Justice Gray, either based on insufficient reasons or upon statutes of local application.

Under the circumstances of this case, we are of the opinion that we should follow the precedent set by the supreme court of Texas in a like case. We are the more inclined to this because it is all that complainant asks, and because, under the facts, the demand of the defendants for an additional homestead, in view of their representation and affidavit to induce the complainant to part with his money, is inequitable, and tends to operate a fraud upon the complainant; and while we recognize the public policy of the state of Texas as declared in its constitution in favor of the exemption of homesteads from forced sales generally, we do not think that the present is a case calling upon us to invent new precedents, or stretch the general rules of equity, in order to give the said defendants a homestead, for which, by the record, they have not paid, and which, under the law, may be, and ought to be, sold to satisfy a just debt.

For these reasons, it is now ordered, adjudged, and decreed that the last paragraph of the decree appealed from be, and the same is hereby, reformed and amended so as to read as follows: Said sale shall be made in the following manner: The said J. J. Dickerson shall first sell all the property covered by complainant's mortgage, as described in the twelfth paragraph of this decree, except the two homesteads of 200 acres each, hereby set apart to Walter Kennedy and Serena K. Walker, to satisfy the sum of $36,504.24, and interest thereon until paid at the rate of 12 per cent. per annum, and all costs as found due to the complainant in the first paragraph of this decree; and, in the event said amount remains unsatisfied, after being credited with the proceeds of said sale, then the said J. J. Dickerson shall sell the homestead of 200 acres herein set apart to Serena K. Walker, to satisfy so much of the balance due on the decree aforesaid as shall not exceed the sum of $6,558.70 and interest; and, should said 200 acres bring an amount more than $6,558.70 and interest, then that such excess be paid to the defendant Serena K. Walker; and, in the event the decree in favor of plaintiff, as found in the first paragraph hereof, shall not be satisfied by such sale or sales, then that the complainant, Holmes Ivory, do have execution for the balance unpaid against the defendants Walter Kennedy, for himself, and as independent executor of the last will and testament of John F. Walker, deceased, and against Serena K. Walker, independent executrix of John F. Walker, deceased, and for his costs.

It is further ordered, adjudged, and decreed that the decree appealed from as herein amended be, and the same is hereby, affirmed at the cost of the appellees.

McCORMICK, Circuit Judge, (dissenting.) I dissent from the decision rendered in this case and from the views expressed in the opinion of the court. There is no question raised on this appeal as to Mrs. Walker's right under the Texas law to the homestead

of 200 acres claimed by her, subject only to a vendor's lien on 1,203 acres, of which said 200 acres is a definite, separate part, specifically described by its metes and bounds. The trial court so found in her favor, and the appellant does not complain of this finding. It is too clearly supported by the admitted facts and familiar Texas law to admit of question. There is, therefore, no place to bring in any declarations made by Kennedy and Walker in reference to their homestead or the affidavits of said parties and their wives, copied into the court's statement of this case. There is no question of high equities before us, but a very plain matter of intensely Texas law as to the right of the owner of a rural homestead of 200 acres, situated as this 200-acre homestead is, to have the vendor's lien, which covers 1,203 acres, first applied to the 1,003 acres excess. There is no room here for learning drawn from Pennsylvania, Massachusetts, or the high court of chancery to determine the relation the right of homestead created by the Texas constitution bears to the common-law right of dower, or the comparative degree of favor the courts administering Texas law should accord the homestead right. For nearly 50 years the people of Texas, by successive and progressive constitutional provisions, and a constant and swelling course of judicial construction on this most prolific of all topics, have marked, illustrated, enlarged, and strengthened the stakes and lines of her public policy in reference to the protection of the homestead of the family against the devices of money lenders and of other creditors, the improvidence of borrowers, and the refinements of lawyers. So far as the case is before us, there is but one creditor here, and there is no room for the exercise of the power of the court as a court of equity to protect the equities of different creditors or incumbrancers. The owners of the homestead are not mortgagors as to it. They are citizens, in the preservation of whose family home the state asserts a jealous interest; so jealous that she has deprived them of all power to charge it by a mortgage, or any other device in the nature of a mortgage, with exceptions not involved in this case. The homestead is not charged or chargeable with a vendor's lien by the head or heads of the family whose home it is. That lien is retained, unless waived, by the vendor, to secure the unpaid purchase price; and giving the evidence of it the form of a mortgage or deed of trust does not create it, or change its essential nature. In the purchase and sale of 1,203 acres of land wholly or partly on credit there is no implied contract that the vendor shall have his lien for the unpaid purchase price of the whole 1,203 acres on that certain 200 acres thereof which the purchaser, being the head of a family, uses as his home, and no subsequent dealings of the parties can have the effect to so charge the homestead 200 acres. It appears that the amount remaining unpaid is not the whole of the purchase price of this 1,203 acres; that, besides accruing interest, one-fifth of the principal of said purchase price had been paid before the 15th November, 1887,—more than one year before appellant's first loan to said purchasers. It also

appears that before making any loan on these lands the appellant had the premises fully inspected, and was then and at all times subsequently fully informed as to all the facts touching these lands, the constituents of these families, their place of actual abode, and their pursuits, and then loaned them money on these lands to the extent of nearly $10 per acre. The presumption is strong, therefore, that in addition to having paid one-fifth of the principal of the purchase money of this 1,203 acres of land purchased by them 21st November, 1881,—more than seven years before they borrowed any money of complainant,—for less than $5 per acre, these purchasers had during these seven years by their industry or other resources greatly improved the market value of these 1,203 acres, or there had been a general advance in the value of such lands in that locality to the benefit of which these purchasers were entitled. On what fact, therefore, or principle of high equity, does this court decline to "invent new precedents, or stretch the general rules of equity, in order to give the said defendants a homestead for which, by the record, they have not paid, and which, under the law, may be, and ought to be, sold to satisfy a just debt?" What just debt? The amount remaining unpaid of the purchase price of 1,203 acres of land, which the sale of the 1,003 acres, not covered by this homestead, might satisfy, and leave this 200 acres discharged from the vendor's lien, and not liable for any part of complainant's debt, however just? Wherefore? Because these heads of the family have given a mortgage or deed of trust on the whole of the 1,203 acres (or on the 1,003 acres, as they might very well do) to secure a loan procured after the purchase of their home? By what law? By the Texas law? Or by some more equitable rule, found in Massachusetts or elsewhere, which cannot recognize the reasons that support "the cases in some of the western states," where the Texas public policy, in reference to the protection of the homestead, has been fully or partially adopted? Verily, not by the Texas law; for in language as plain as "the way of holiness," placed above the power of the legislature to change or qualify it, self-acting in the highest sense, the Texas law says: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money thereof, * * * whether such mortgage or trust deed or other lien shall have been created by the husband alone or together with his wife." I submit with the utmost confidence that the supreme court of Texas has set no precedent that will sustain the reasoning of the opinion of the court in this case. With equal confidence I submit that in the case of Pridgen v. Warn, 79 Tex. 588, 15 S. W. Rep. 559, the question we are here called on to decide was not in the mind of either of the parties, or in the mind of the counsel of either of the parties, or in the mind of either of the members of that august tribunal of learned, experienced, and distinguished Texas jurists.