THE STATE, RICHARD WOOD, PROSECUTOR, v.
ATLANTIC CITY.

1. Under a title concerning the division of wards in cities, a statute may contain provisions for the representation of the new wards in the municipal government.

2. A statute authorized cities "already divided into wards" to subdivide the wards when they reached a certain size. *Held*, that it was not confined to cities which had been divided into wards before its passage.

3. Cities may be constitutionally classified on the basis of population, for the purpose of prescribing a limit to the size of the wards.

On *certiorari.*

Argued at November Term, 1893, before Justices DIXON and ABBETT.

For the prosecutor, *Clarence L. Cole.*

For the defendant, *Allen B. Endicott.*

The opinion of the court was delivered by

DIXON, J.   This *certiorari* brings up two ordinances of Atlantic City, passed in January, 1891, dividing the First and Second wards of the city each into two wards. The reason assigned for questioning the validity of these ordinances is that "An act amendatory of an act entitled 'An act concerning divisions of wards in cities of this state,'" approved May 10th, 1889 (*Pamph. L., p.* 443), under which authority to enact the ordinances is said to be claimed, is unconstitutional, because its object is not sufficiently expressed in its

title, and it is a special act regulating the internal affairs of cities.

This statute provides that, in the cities to which it applies, the common council may divide any ward into two wards, and that each of the new wards shall be entitled to the same representation in the municipal government as the ward from which they were formed.

Counsel for the prosecutor contends that these are two objects, and that the latter, relating to representation, is not sufficiently expressed in the title.

We think there is no basis for this contention. The end sought by the creation of wards in cities is the securing of local representation in the municipal government for the various sections of the city, and therefore provisions for such representation are of the very essence in any scheme for the formation of wards. The direct object of this statute, the division of wards, is expressed in the title; the other features of the act are cognate to it, and so are properly included. *Payne* v. *Mahon*, 15 *Vroom* 213.

The objection that the act is special is more deserving of consideration. It rests upon the first section of the statute, which enacts, " that in cases where, in any city of not more than fifty thousand inhabitants already divided into wards, there shall have been polled in any such ward, at the last presidential or any subsequent election, more than one thousand legal votes, the common council or other legislative body of such city shall have power   *   *   *   to divide any said ward into two wards;   *   *   *   *provided*, the provisions of this section shall not now or hereafter apply to any city of this state wherein the boundary lines of the wards therein are required by law to conform to the assembly district lines in any such city."

The proviso of this section must, we think, be deemed inefficacious. The only statute hitherto passed, requiring ward lines to correspond with assembly district lines, is that of April 18th, 1889 (*Pamph. L.*, *p.* 288), which was adjudged inoperative by this court in *Dempsey* v. *Newark*, 24 *Vroom* 4.;

and as, according to the decision of this court in *State* v. *Wrightson* and *State* v. *Conner, ante p.* 126, there can exist no assembly districts other than the counties, no statute of such a nature can hereafter become a law. Consequently no city has been or can be excluded from the reach of the statute under review, by force of the proviso.

In ascertaining the cities to which this statute applies, the words "already divided into wards" are of some importance. They may have a meaning which would confine the operation of the act to cities so divided previous to its passage, or they may be construed to embrace all cities which, when the authority conferred by the act is called into exercise, had already been divided into wards. If the former signification be ascribed to them, the act will thereby be rendered special, under the rule laid down in *Pavonia Horse Railroad Co.* v. *Jersey City,* 16 *Vroom* 297, and *Pierson* v. *O'Conner,* 25 *Id.* 36. I therefore think the other construction should be adopted, for it is the duty of the court, if it reasonably can, to keep the act within constitutional restrictions. Although this construction makes the clause merely express what was necessarily implied in the power granted, viz., to divide wards, yet such tautology in statutes is not uncommon and should not be got rid of by an interpretation which will nullify the enactment.

The cities, therefore, to which the statute is applicable are such as have not more than fifty thousand inhabitants and are divided into wards, and the question is whether these cities may constitute a class by themselves, for the purpose to be subserved by this law.

The manifest design of the statute is to secure to the inhabitants of cities at least an approach to equality of representation in the municipal government. In cities which are not divided into wards absolute equality is enjoyed by all the inhabitants, for they all unite in selecting all the representatives. But where wards exist only an approximation to equality is possible, and even this can be attained only by reasonable limitations upon the size of the wards. Such a

limitation is prescribed by this act.    It is therefore plain that cities not divided into wards do not naturally come within this legislative purpose, and their exclusion cannot render the statute special.

It is also plain that, in prescribing a limit to the size of wards, there is substantial grounds for discrimination between the larger and smaller cities.    If, in our largest cities, each ward were to be divided whenever the voters therein numbered a thousand, the governing body of the municipality, composed of even a single member from each ward, might become inconveniently numerous.    The population of the wards ought to bear some reasonable proportion to the population of the cities.    The legislature therefore has the right to classify the cities of the state on the basis of population, for the purpose of fixing the size of their wards.    The propriety of such a classification is expressly recognized in the opinion of the Chief Justice, in *Dempsey* v. *Newark*, 24 *Vroom* 4, 13.

We find no adequate reason for denying the constitutionality of this statute.

The case laid before us does not show that, in the wards divided by these ordinances, a thousand votes had been cast at a preceding election, but we understand this fact to be conceded.

The proceedings under review should be affirmed.