[No. 3982. Decided November 29, 1901.]

THE STATE OF WASHINGTON *on the Relation of Christie &* *Miller, Appellant,* v. J. A. MEEK, *as Liquor Inspector,* *Respondent.*

INTOXICATING LIQUORS — INSPECTORS — CONSTRUCTION OF STATUTE.

Bal. Code, §2927, which was passed in the year 1860, when the cities of the then territory were in an embryonic stage, provides that "It shall be the duty of the county commissioners of each county to appoint at least one suitable person for each village or neighborhood where spirituous liquors are sold in less quantity than a gallon, whose duty it shall be to inspect all liquors," to be so sold. *Held* that the word "village" in such statute should be construed to cover a city, where the village subsequently assumed the proportions of a city, and there is no later statute making it clearly appear that a city is exempted from the provisions of the earlier statute.

SAME — OMISSION OF STATUTE FROM CODE — EFFECT.

The omission of the statute now known as § 2927, Bal. Code, from the Code of 1881 did not effect its repeal, since § 3320 of the Code of 1881 specially provided that "all acts or parts of acts of a general nature, in force at the commencement of the 8th biennial session of the legislative assembly, and not repealed shall be, and the same are hereby continued, in full force and effect, unless the same be repugnant to the act upon the same subject matter, passed or revised at the 8th biennial or present extra session of

the legislature," and the statute in controversy was in effect at the time specified, was not repealed, and was not repugnant to any act passed during the sessions mentioned.

SAME — REPEAL BY IMPLICATION.

Bal. Code, § 2927, was not repealed by implication by the act (Laws 1899, p. 183) entitled "an act to provide against the adulteration of food," § 2 of which provides that "the term 'food' as used herein shall include all articles used for food or drink by man, whether simple, mixed or compound," since the legislative interpretation of the term "drink" as used therein is defined by a later statute (Laws 1901, p. 194) as not including liquors containing two per cent. or more of alcohol.

SAME.

Bal. Code, § 2927, being an act authorizing county commissioners to provide for the inspection of liquors, with a view to the prohibition of the sale of such as are impure, is not repealed as to incorporated cities by subsequent legislation which gives them the power to regulate the traffic in intoxicating liquors within their limits, since the power conferred upon cities in this respect relates more especially to what are usually termed "police powers," which must be exercised consistently with the general laws of the state, one of which is that only pure liquors shall be sold. (FULLERTON, J., dissents.)

SAME — ABROGATION OF STATUTE BY NON-USER.

Non-user of a statute will not effect its abrogation, unless its obsoleteness is in some way recognized by subsequent legislation.

Appeal from Superior Court, King County.—Hon. W. R. BELL, Judge. Affirmed.

*Solon T. Williams* and *Roberts & Leehey*, for appellants.

*John F. Dore* and *James J. McCafferty*, for respondent.

PER CURIAM.—On May 31, 1901, the board of county commissioners of King county, acting under the provisions of § 2927 *et seq.*, Bal. Code, appointed the respondent liquor inspector of the city of Seattle. Thereafter respondent qualified by filing his bond and oath of office, and entered upon the performance of his duties. There-

upon the relators (appellants), who were engaged in the retail liquor business in the city of Seattle, instituted this action to restrain respondent from acting under his said appointment. A demurrer to the complaint was sustained by the court, the cause dismissed, and judgment rendered against appellants for costs. From said judgment this appeal is prosecuted.

Section 2927, *supra*, is as follows:

"It shall be the duty of the county commissioners of each county to appoint at least one suitable person for each village or neighborhood, where spirituous liquors are sold in less quantities than a gallon, whose duty it shall be to inspect all liquors to be sold in less quantities than a gallon. Said inspector shall mark and approve all such liquors submitted to him, if he shall find them pure and free from adulteration; but if he shall believe that any liquors so submitted to him have been adulterated in any manner, he shall retain possession of them, and may, at the request of the owner, submit it to chemical proof, and if found impure or adulterated, said liquor shall be destroyed by said inspector."

It is first contended by appellants that the statute is so vague and indefinite that it is not susceptible of enforcement. The term "neighborhood" may be said to be a comprehensive term.

"One man's 'neighborhood' may be a small hamlet, while the neighborhood of another may be a county or state." 16 Am. & Eng. Enc. Law, 485.

"Etymologically and by common understanding, the phrase 'in the vicinity of' means in the neighborhood, and 'neighborhood,' as applied to place, signifies nearness, as opposed to remoteness. Whether a place is in the vicinity or the neighborhood of another place depends upon no arbitrary rule of distance or topography." *Langley v. Barnstead,* 63 N. H. 246.

Considered with reference to the term "neighborhood," as used in the statute, since it depends upon no arbitrary rule of distance or topography, it would seem that the county commissioners are left to exercise their own discretion and judgment as to what specific portion of the county's territory they shall determine to be a neighborhood for the purposes of inspection as provided by the statute. But the term "village" is more specific, and each aggregation of individuals living in close proximity, as is customary in village life, must be treated as a village for the purposes of the statute. It is urged that the word "village" is not sufficiently definite to include the city of Seattle. It may be said that all cities have come from the growth and expansion of villages. In 1860, when the law in question was passed, the cities of Washington were embryonic. The word "village" appearing in an unrepealed statute passed in those early territorial days should be construed to cover a city when the village has assumed the proportions of a city, unless some later statute makes it clearly appear that a city, considered strictly as such, is exempted from the provisions of the earlier statute.

It is next urged that the territorial legislature in the year 1881 enacted a code which was intended to contain such general laws as were to be continued, and, since the act in question was omitted from such code, such omission is sufficient of itself to effect the repeal of the statute. Section 3320 of the Code of 1881 provides as follows:

"All acts or parts of acts of a general nature, in force at the commencement of the 8th biennial session of the legislative assembly, and not repealed shall be, and the same are hereby continued, in full force and effect, unless the same be repugnant to the act upon the same subject mat-

ter, passed or revised at .the 8th biennial or present extra session of the legislature."

This law was in effect at the commencement of the eighth biennial session of the legislature. It was not repealed, and no act was passed repugnant thereto. Therefore its omission from the Code of 1881 did not effect a repeal of the statute.

It is next contended that the statute is repealed by the terms of chapter 113, p. 183, Laws 1899, the act therein contained being entitled "An act to provide against the adulteration of food." The act provides that the state dairy commissioner shall be state dairy and food commissioner, and he is given certain powers by way of superintending the inspection and analysis of articles of food. Section 2 of the act is as follows:

"The term 'food' as used herein shall include all articles used for food or drink by man, whether simple, mixed or compound."

Appellants' counsel concedes that the word "food," in the ordinary acceptance, does not include alcohol or any form of alcoholic liquors, but insists that by the terms of § 2, *supra,* the legislature has placed a legislative definition upon the term "food" which is made to include alcoholic liquors. If doubt existed before as to the legislative meaning in that regard, the legislature of 1901 has set the matter at rest. Chapter 94, p. 194, Laws 1901, expressly repeals the act of 1899 above mentioned, and provides a new method for food inspection. Section 2 of the act contains the following:

"The term 'food' as used herein shall include all articles used for food, drink and condiment by men, whether mixed, simple or compound. . . . The term 'drink' as used herein shall not include liquors containing two per cent. or more of alcohol."

It is thus clear that the law providing against the adulteration of food does not apply to alcoholic liquors.

Appellants also insist that this statute has been abrogated by nonuser. Counsel observes that "for more than forty years this peculiar statute has slept its Rip Van Winkle sleep undisturbed by any attempt to enforce it." In *Kitchen v. Smith,* 101 Pa. St. 452, the court, when discussing a statute a portion of which seems to have been habitually disregarded, observes as follows:

"Approbation of two justices of the peace lies at the foundation of the power of overseers to lay a rate or assessment. And if not first obtained, their act in laying a tax is unauthorized by the statute. So the law is written, and neither the overseers of the poor nor the courts can treat it as obsolete."

The following statement concerning the nonuser of a statute is contained in § 137, Sutherland, Statutory Construction:

"As repeal can only proceed from the legislature, the obsoleteness of the nonused statute must be in some way recognized in subsequent legislation. Popular disregard of a statute or custom opposed to it, will not repeal it."

We are not aware of any subsequent legislation which would seem to recognize the nonuser of this statute on the subject of the inspection of spirituous liquors, unless it be found in appellants' further argument that subsequent legislation gave to incorporated cities the power to regulate the traffic in intoxicating liquors within their limits. We are referred to § 739, Bal. Code, where the powers of cities of the first class are enumerated. The following subdivisions of said section are particularly cited:

"32. To regulate the selling or giving away of intoxicating, malt, vinous, mixed or fermented liquors."

"34. To regulate the carrying on within its corporate

limits of occupations which are of such a nature as to affect the public health or the good order of said city."

"36.   To provide for the punishment of all disorderly conduct and of all practices dangerous to public health or safety, and to make all regulations necessary for the preservation of public morality, health, peace and good order within its limits."

It is argued that the above provisions supersede the provisions of the statute here under consideration, and counsel therefore conclude that the power to inspect spirituous liquors within the limits of the city of Seattle now resides in the city alone.   The power referred to in subdivision 32 relates to the general control of the traffic in intoxicating liquors, coming under what are usually termed "police powers."   The city has the undoubted power to require a license for the conduct of the sale of intoxicating liquors, to fix the amount to be paid therefor, and generally to direct the method of sale, not inconsistent with general laws of the state.   It was, however, the undoubted intention of the legislature of 1860 that impure or adulterated liquors should not be sold anywhere within the then territory, and it made provision to prevent it which should apply to the whole territory.   The purpose involved in the law is the same in principle as that sought to be reached by the existing law providing against the adulteration of food; the one providing against the sale of adulterated liquor and the other against the sale of adulterated food.   Subdivisions 34 and 36, *supra,* relate to the city's power to regulate occupations which are of such a nature as to affect the public health, and it might with equal force be insisted that the provisions of the law providing against the adulteration of food cannot be enforced in cities of this state. Such a result would practically render the law nugatory,

since its beneficial effects must, in the nature of things, be far greater in the cities than elsewhere. It is manifest that one method has been provided by the legislature to prevent the sale of adulterated and impure food and another and distinct method to prevent the sale of adulterated and impure liquors. The latter method, though long since adopted by the legislature, and perhaps but little used, we find to be still the law. The state first reserves the right to say that only pure liquors shall be sold, and then grants to cities the power to regulate the sale of pure liquors only.

The judgment is affirmed.

FULLERTON, J. (dissenting).—I dissent. The act relied upon to sustain the appointment of the inspector was nothing more than an act regulating the sale of intoxicating liquors. As such it was repealed by the subsequent legislation vesting in boards of county commissioners of counties and the mayors and councils of cities the "sole and exclusive authority and power to regulate, restrain, license or prohibit the sale or disposal of spirituous, fermented, malt or other intoxicating liquors" within their respective jurisdictions.