MILLVILLE IMPROVEMENT COMPANY v. PITMAN, GLASS-
    BORO AND CLAYTON GAS COMPANY ET AL.

Submitted June Term, 1907—Decided November 11, 1907.

1. The word "town" in the supplement to the act to authorize the
   formation of gas light corporations and regulate the same, ap-
   proved March 14th, 1879 (*Gen. Stat.*, *p.* 1613, *pl.* 30), is used in
   its generic sense and includes townships.
2. The word "neighboring" in the act of March 14th, 1879 (*Gen.
   Stat.*, *p.* 1613, *pl.* 30), is sufficiently extensive in its meaning to
   make the act applicable to municipalities in the same county to
   which gas may conveniently be conveyed from a central plant.
3. An ordinance granting the right to transmit gas to other munici-
   palities is not bad because it fails to limit the right to those
   municipalities in which the gas company has lawful authority
   to lay or maintain pipes for the distribution of gas.
4. The supplement to the act to authorize the formation of gas
   light corporations and regulate the same, approved March 14th,
   1879 (*Gen. Stat.*, *p.* 1613, *pl.* 30), is constitutional.

On *certiorari.*

Before Justices GARRISON and SWAYZE.

For the prosecutor, *Louis H. Miller* and *Gaskill & Gaskill.*

For the defendants, *French & Richards.*

The opinion of the court was delivered by

SWAYZE, J.  The question involved is the validity of an
ordinance of Franklin township granting permission to the
Pitman, Glassboro and Clayton Gas Company to lay pipes in
certain streets and roads of the township.  The authority of
the gas company is found in the supplement of March 14th,
1879, to the Gas Company act of 1876.  *Gen. Stat.*, *p.* 1613,
*pl.* 30.  It authorizes the company to extend its main pipes
to any neighboring city, town or village wherein no gas com-
pany already exists.

It is objected that this act does not authorize an extension
of mains into a township as distinguished from a city, town

or village, and that the words of the act point to incorporated places or at least to compact settlements and not to rural communities.

The word "town" has sometimes been given a much broader construction, notably in construing the clause of the constitution forbidding special legislation for the internal affairs of towns and counties. *Pell* v. *Newark,* 11 *Vroom* 550. In other cases a more restricted meaning has been adopted. In *Stout* v. *Glen Ridge,* 30 *Id.* 201, it was held to mean municipalities above the grade of townships and below that of cities, and in *Herman* v. *Guttenberg,* 34 *Id.* 616, incorporated towns only. Where a word is used with such different meanings, its signification in a particular statute must be determined in view of the object of the statute, and the context. In the present case it may well be argued that a supply of gas was likely at the time of the passage of the acts of 1876 and 1879, to be required only in compactly settled communities, but the force of this argument is destroyed by the language used in this very act, for the proviso requires the consent of the common council, township committee or municipal authority of such neighboring city, town or village. The words "township committee" would be very inappropriate unless town was used in its generic sense. And by the supplement of March 28th, 1891 (*Gen. Stat., p.* 1613, *pl.* 32), and the amendment of 1897 (*Pamph. L., p.* 202), the legislature recognized the fact that gas companies organized under the act might be operating in townships and boroughs, and empowered such companies to mortgage their property. This amounted to a legislative definition of the word broad enough to cover townships.

It is, however, said that the township of Clayton is not a neighboring town, and the word "neighboring" is likened to the word "vicinity" in *Madison* v. *Morristown Gas Light Co.,* 20 *Dick. Ch. Rep.* 356. The language of the charter in that case was very different. It gave the company power to supply gas in Morristown and its vicinity. The construction adopted by the Court of Errors and Appeals was based upon the fact that Madison was in the bounds of an independent municipality. That construction is not permissible in the present

case, for by the very terms of the act the company may extend its mains to other municipalities. · The word "neighboring" is one of an indefinite meaning, as may be seen from the cases cited in 21 *Am. & Eng. Encycl. L.* 528, in some of which a narrow and in others a broad signification was favored. Its meaning must depend upon the circumstances and the subject-matter with which we have to deal. With the improvement in means of communication, municipalities which were remote become in a fair sense neighboring municipalities. In a commodity which may be distributed as readily and as advantageously as gas, we are unwilling to limit it to adjoining municipalities. We think it may at least be held to be broad enough to include municipalities within the same county to which gas may conveniently be conveyed from a central plant; that suffices for the present case.

The next objection is that the ordinance purports to grant the right to transmit gas to other municipalities, without limiting those municipalities to those in which the company has lawful authority to lay or maintain pipes for the distribution of gas pursuant to the act of 1903. *Pamph. L., p.* 359. This objection seems rather fanciful; it would obviously be impossible for the company to avail itself of the permission to transmit gas except to municipalities in which it had lawful authority to lay or maintain pipes.

We think the objection that the streets are not specified with precision is not founded in fact. The description of the road as being within the named villages seems to us sufficient to comply with the statute without setting forth specific beginning and ending points.

The only other objection that seems to require discussion is that the act of 1879 is unconstitutional. It is, of course, now settled by the decision in Herman *v.* Guttenberg that cities, towns and villages are constitutional classes, and the argument that the act is special, because limited to those municipalities, is without merit.

It is also argued that the act of 1879 is special because it applies only to gas companies with special charters and gas companies organized under the general act, and does not

apply to gas companies organized under the act of February 17th, 1881, incorporating the purchasers of property under judicial sales of the property of various corporations including gas companies. *Gen. Stat., p.* 3694, *pl.* 34. The act of 1879 included all gas companies then existing under special charter or the general law, and all to be thereafter organized under the general law. Since the constitutional amendments of 1875 were then in force, no other mode of incorporation could have been thought of, and the act was evidently meant to reach all possible cases. It is difficult to see how an act general at the time of its enactment could be made special by an act passed two years later. It would be reasonable to hold that, if there were a constitutional defect, it was in the later act, but an examination of the act of 1881 shows that the argument is without foundation, for that act confers upon the new corporation all the rights, powers, immunities, privileges and franchises of the corporation to which it succeeds, and among these in the case of gas companies are, of course, included those conferred by the act of 1879.

It is further argued that the act of 1879 grants a special privilege to gas companies already existing since it protects them against the competition of gas companies of other municipalities which are not permitted by the act of 1879 to extend their mains to a municipality where a gas company already exists. In fact, however, existing gas companies derive no privilege whatever directly from the act; the only benefit is that which comes indirectly, because other companies are not permitted to extend mains into their territory, but it is the same sort of indirect benefit that would enure if the legislature allowed a gas company to extend its mains only into adjoining municipalities (since that would protect from competition gas companies in municipalities which did not immediately adjoin), or repealed all laws for the incorporation of new gas companies (since that would give a monopoly to those already established). No reason is suggested why the legislature, in authorizing gas companies to extend their mains, may not limit the field to which they are allowed to extend, and, indeed, such a limitation of the

privileges granted is most proper. The constitution does not require that the legislature shall pass acts so drawn as to promote widespread competition. The privileges to be granted to new companies are left to the judgment of the legislature, which may put such restrictions upon the privileges granted as seem to it best. There is, moreover, a natural distinction between communities already supplied with gas and those not so supplied, which makes it proper to legislate for the latter alone when the matter involved is the gas supply.

The limitation in the act of 1879 to gas companies already existing refers, of course, to gas companies which may exist at any time, not merely at the date of the passage of the act. *Wood* v. *Atlantic City,* 27 *Vroom* 232.

The last objection to the act of 1879 is that by its second section it gives the gas company, which has obtained the necessary permission, the same rights and privileges of laying gas mains and the like in the neighboring municipalities which it has under its original organization in the municipality where it was originally located. Stress is laid upon the words "and the like," and the argument is that there are doubtless corporations with special charters authorizing them not only to distribute gas but also to supply water or have other peculiar powers. No instance of the kind is cited to us, and it may well be doubted whether such a corporation would come within the definition of a gas company in the act of 1879. If such, however, be the case, we think authority to lay gas mains and the like would not embrace water pipes or other pipe lines; the words "and the like" refer to the word "mains," and the authority is to lay gas mains and gas pipes similar to mains, which may, perhaps, in analogy to sewers, be called "laterals." That would seem the natural construction of the words in a supplement to an act the title of which is "An act to authorize the formation of gas light corporations and regulate the same."

If, however, the broader meaning be given to the words, we see no difficulty in regarding section 2 of the act of 1879 as severable from section 1.

The ordinance should be affirmed, with costs.