**CHRISTY–DOLPH et al. v. GRAGG, Commissioner of Labor Statistics of Texas, et al.**

No. 420.

District Court, W. D. Texas, Austin Division.

June 14, 1932.

White, Taylor & Gardner, of Austin, Tex., for plaintiffs.

James V. Allred, Atty. Gen., Maurice Cheek, Asst. Atty. Gen., and James A. King, of Austin, Tex., Sp. Counsel, for defendants.

. Before HUTCHESON, Circuit Judge, and WEST and McMILLAN, District Judges.

McMILLAN, District Judge.

. The matter at issue here is the validity, under the Fourteenth Amendment to the Constitution of the United States, of a part of article 1580 and of article 1581 of the Penal Code of the State of Texas, as same apply to the plaintiffs herein. A temporary restraining order was issued by the District Judge, on proper showing made under the statute, pendente the hearing on the application for interlocutory injunction. A hearing on the application for interlocutory injunction came on to be heard before a court of three judges.organized in compliance with section 266 of the Judicial Code (28 USCA

§ 380), after due notice given to the parties and the Governor and Attorney General of the state in compliance with the provisions of that section of the statute. On this hearing, plaintiffs, while still pressing their application for an interlocutory injunction, agreed in open court with the defendants that the matter might and should be submitted on its merits and finally disposed of at that time. Evidence, by way of agreed stipulation and ex parte affidavits, was submitted by both parties, the matter was fully argued by counsel, and written briefs filed.

Plaintiffs allege, in substance, that they are under binding written contracts entered into with the board of regents of the University of Texas, constructing six buildings on the grounds of the campus of the University of Texas, or performing certain electrical work in connection with said buildings, the total contract price therefor aggregating more than a million dollars; that in the course of the performance of these contracts they are employing certain skilled and common labor, which they are paying at various rates, dependent on the kind and class of labor, and which rates they had ascertained and determined on investigation made prior to submitting their bids and entering into the contracts with the board of regents; that they are able to secure, at the rates paid by them, more workmen than they need. They further allege that the commissioner of labor, after holding a public hearing for the purpose of determining the current rate of per-hour wages in the city of Austin and vicinity, arbitrarily found, determined, and promulgated a much higher wage scale than plaintiffs are paying, and has called upon these plaintiffs to inaugurate the scale of wages fixed by him, threatening, in the event of their refusal to do so, to institute prosecutions against them, under the articles of the statutes hereinbefore mentioned; that the county attorney has announced his intention of accepting these complaints and prosecuting the cases; that the statutes are void, as applied to these plaintiffs; and that their enforcement will irreparably damage and injure plaintiffs and deprive them of their liberty and property without due process of law.

The defendants, acting through the Attorney General of the state and special counsel, move generally to dismiss the bill, and, specially answering, admit that the defendant commissioner of labor will, if not prevented, undertake to enforce the provisions of the statutes complained against. They admit the greater portion of the allegations of the plaintiffs' bill, but deny the legal effect thereof, and specifically deny that there is no current rate of per-hour wages, for the character of work in which plaintiffs are engaged, in Austin, Tex.

The stipulation as to the facts agreed to by the parties sustains the allegation of plaintiffs' bill as to the formal matters pleaded, and as to their contracts with the board of regents, the workmen and laborers employed, the amount per day and per hour paid to said workmen and laborers, the public hearing held by the commissioner of labor, the establishment, after such hearing by the said commissioner, of a wage scale, and the announced intention on the part of the commissioner and the county attorney to file complaints against and prosecute those who fail to abide by said wage scale. It further sets out that there are about forty-four contractors doing business at Austin, not including the plaintiffs and others engaged in the construction of buildings for the University of Texas; that there was no provision in the contracts between plaintiffs and the regents requiring plaintiffs to pay for labor at a current hour wage or comply with the provisions of article 1580 of the Penal Code; that plaintiffs had been at work under said contracts for about thirty days before defendant Gragg held his hearing; and that plaintiffs used the wage scale now paid by them as a basis for their bids on the contracts, and are able to secure all the labor required by them for the wages now being paid.

A number of ex parte affidavits were introduced, and from these affidavits we find the facts with regard to the matters there covered to be: That there was no definite, fixed scale of wages per hour in the city of Austin or vicinity, at the time under inquiry, for labor of the class and kind employed by the plaintiffs; that carpenters could be and were employed at varying prices from four to seven dollars per eight-hour day; that common laborers could be and were employed at from 20 to 30 cents per hour on the basis of an eight-hour day; that electricians could be and were employed at the rate of from six to seven dollars per eight-hour day; that plaintiffs were, at the time they entered into the contract with the regents, and have been at all times since, able to procure all of the labor, both skilled and common, that they need at the scale of wages which they are paying. At the hearing held by the labor commissioner, evidence was extensively tak-

en with regard to the wages paid various classes of labor in the city of Austin, and the testimony indicated that the wages of carpenters ranged from four to seven dollars per day of eight hours; that the Union scale was $7 per day and that the nonunion scale was less; that the wages of common laborers ranged from 25 to 37½ cents per hour. Other than the general statement contained in most of the affidavits' that the wages deposed to were paid in Austin or vicinity, there is no definite evidence in the record tending to fix the.locality affected by the matter under inquiry.

From this preliminary statement of the pleadings as shown by the record and the facts as found by the court, we now pass to the law of the case.

■ Article 1580 of the Penal Code of the state of Texas is in chapter 5 of title 18, and deals with contracts made by or on behalf of the state, or any county, municipality, or other legal or political subdivision of the state, with any corporation, person, association of persons for the performance of any ·work, and, after substantially stating that eight hours, with certain exceptions, shall be considered ·as constituting a day's work, contains the following provision: "Not less than the· current rate of per hour wages for like work in the locality where the work is being performed shall be paid to the laborers, workmen, mechanics or other persons so employed or on behalf of the State, or for any county, municipality or other legal or political subdivision of the State, county or municipality, and every contract hereafter made for the performance of work for the State,· or for any county, municipality, or other legal or political subdivision of the State, county or municipality, must comply with the requirements of this chapter." .

The following article, namely, article 1581, denounces penalties as follows: "Any person, or any officer, agent or ·employee of any person, corporation or association of persons, or any officer, agent or employee of the State, county, municipality, or any legal or political subdivision of. the State, county or municipality, who shall fail or refuse to comply with any provisions of this chapter or who shall violate any of its provisions shall be fined not less than fifty nor more than one thousand dollars, or be imprisoned in jail not to exceed six months or both. Each day of such violation shall be a separate offense."

Plaintiffs assail these provisions on the ground that the term "not less than the current rate of per hour wages for like work" is vague, indefinite, and uncertain, and furnishes no definite criterion by which these plaintiffs, or any other employer of labor, can be guided, and on the further ground that the term "in the locality where the work is being performed" is also vague, indefinite, and uncertain, because the statute does not define, and no one can say·what is, "the locality where the work is being performed." They say that the enforcement of the statutes will deprive plaintiffs of their liberty and property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution, because said statutes provide no ascertainable standard of guilt.

In our opinion, it cannot be doubted that this present case is ruled by the decision of the Supreme Court of the United States in the case of Connally v. General Construction Company, 269 U. S. 385, 46 S. Ct. 126, 128, 70 L. Ed. 322. There a statute of the state of Oklahoma, practically identical with the statute of the state of Texas under consideration, was challenged on the same grounds which are asserted here. The only material respect in which the Oklahoma statute differs from the Texas statute is that the Oklahoma statute provides that "not less than the current rate of per diem wages in the locality where the work is performed shall be paid." Comp. St. 1921, § 7255. We can conceive of no reason why the use of the per diem standard in one instance and the per hour standard in the other could effect any difference in the principle involved. In the Connally Case the Supreme Court, in speaking of the provisions of the Oklahoma statute mentioned above, and after discussing and analyzing various authorities, said:

"We are of opinion that this provision presents a double uncertainty, fatal to its validity as a criminal statute. In the first. place, the words 'current rate of wages' do not denote a specific or definite sum, but minimum, maximum, and intermediate amounts, indeterminately, varying from time to time and dependent upon the class and· kind of work done, the efficiency of the workmen, etc., as the bill alleges is the case in respect of the territory surrounding the bridges under construction. The statutory phrase. reasonably cannot be confined to any of these amounts, since it imports each and all of them. The 'current rate of wages' is not simple, but progressive—from so much

(the minimum) to so much (the maximum), including all between; and to direct the payment of an amount which shall not be less than one of several different amounts, without saying which, is to leave the question of what is meant incapable of any definite answer. See People ex rel. Rodgers v. Coler, 166 N. Y. 1, 24, 25, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605.

"Nor can the question be solved by resort to the established canons of construction that enable a court to look through awkward or clumsy expression, or language wanting in precision, to the intent of the Legislature. For the vice of the statute here lies in the impossibility of ascertaining, by any reasonable test, that the Legislature meant one thing rather than another, and in the futility of an attempt to apply a requirement, which assumes the existence of a rate of wages single in amount, to a rate in fact composed of a multitude of gradations. To construe the phrase 'current rate of wages' as meaning either the lowest rate or the highest rate, or any intermediate rate, or, if it were possible to determine the various factors to be considered, an average of all rates, would be as likely to defeat the purpose of the Legislature as to promote it. See State v. Partlow, 91 N. C. 550, 553, 49 Am. Rep. 652; Commonwealth v. Bank of Pennsylvania, 3 Watts & S. (Pa.) 173, 177."

With regard to the question of "locality," the court said: "In the second place, additional obscurity is imparted to the statute by the use of the qualifying word 'locality.' Who can say, with any degree of accuracy, what areas constitute the locality where a given piece of work is being done? Two men, moving in any direction from the place of operations, would not be at all likely to agree upon the point where they had passed the boundary which separated the locality of that work from the next locality. It is said that this question is settled for us by the decision of the state Supreme Court on rehearing in State v. Tibbetts [21 Okl. Cr. 168], 205 P. 776, 779. But all the court did there was to define the word 'locality' as meaning 'place,' 'near the place,' 'vicinity,' or 'neighborhood.' Accepting this as correct, as of course we do, the result is not to remove the obscurity, but rather to offer a choice of uncertainties. The word 'neighborhood' is quite as susceptible of variation as the word 'locality.' Both terms are elastic and, dependent upon circumstances, may be equally satisfied by areas measured by rods or by miles. See Schmidt v. Kansas

City Distilling Co., 90 Mo. 284, 296, 1 S. W. 865, 2 S. W. 417, 59 Am. Rep. 16; Woods v. Cochrane and Smith, 38 Iowa, 484, 485; State ex rel. Christie v. Meek, 26 Wash. 405, 407, 408, 67 P. 76; Millville Imp. Co. v. Pitman, etc., Gas Co., 75 N. J. Law, 410, 412, 67 A. 1005; Thomas v. Marshfield, 10 Pick. (Mass.) 364, 367. The case last cited held that a grant of common to the inhabitants of a certain neighborhood was void because the term 'neighborhood' was not sufficiently certain to identify the grantees. In other connections or under other conditions the term 'locality' might be definite enough, but not so in a statute such as that under review imposing criminal penalties."

A decree of a three-judge court granting an interlocutory injunction restraining the enforcement of the provisions of the Oklahoma statute was affirmed.

It is not possible to fairly distinguish this decision in the Connally Case from the matters at issue in the case at bar. It is perfectly obvious from the findings of fact which have heretofore been made that the wages paid for labor such as that involved here, even adopting the city of Austin as the locality intended, varied to a great extent. The term "current rate of wages," as used in the statute, and as the same must be applied to the plaintiffs in this particular case, furnishes absolutely no definite criterion by which the parties concerned can be guided in determining whether they are or are not complying with the law. Furthermore, it is equally obvious that the term "locality where the work is being performed," as used in the statute, fixes no definite area of which all parties may be apprized, nor does the evidence here aid the matter any, as the testimony leaves the question of the locality as vague and indefinite as the statute itself.

The defendants, in an effort to avoid the effect of the Connally Case, rely, in their brief, on the decision in Ruark v. International Union of Operating Engineers, 157 Md. 576, 146 A. 797. There the Supreme Court of Maryland, in a long discussion of the Connally Case, refused to accede to the reasoning of the Supreme Court of the United States either with regard to the "current rate of per diem wages" or the "locality where the work is performed." The expressions in the Ruark Case contrary to the decision in the Connally Case were dicta, and were so recognized by the court delivering the decision, and, even had they not been dicta, we would not feel authorized to follow

the decision. The Connally Case has been cited with approval by the Supreme Court of the United States a number of times since its rendition. See Yu Cong Eng v. Trinidad, 271 U. S. 500, 46 S. Ct. 619, 70 L. Ed. 1059; Whitney v. California, 274 U. S. 357, 47 S. Ct. 641, 71 L. Ed. 1095; Cline v. Frink Dairy Co., 274 U. S. 454, 47 S. Ct. 681, 71 L. Ed. 1146; Miller v. Schoene, 276 U. S. 272, 48 S. Ct. 246, 72 L. Ed. 568; Manley v. Georgia, 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575; Smith v. Cahoon, 283 U. S. 566, 51 S. Ct. 282, 75 L. Ed. 1264. In none of these cases has the Supreme Court indicated the slightest intention of receding in any particular from the doctrines announced in that decision. In fact, in the very late case of Champlin Refining Co. v. Corporation Commission of the State of Oklahoma et al., 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. ——, in which the opinion was delivered on May 16, 1932, the court again announces the rules set out in the Connally Case and quotes from it at length.

In view of this great weight of authority, it hardly seems necessary to go further. It is proper to mention, however, in passing that this rule announced by the federal Supreme Court in no way differs from the decisions by the Supreme Court and the Court of Criminal Appeals of the state of Texas. See M., K. & T. Ry. Co. v. State, 100 Tex. 424, 100 S. W. 766; Sogdell v. State, 81 Tex. Cr. R. 66, 193 S. W. 675; Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494; Russell v. State, 88 Tex. Cr. R. 512, 228 S. W. 566; Snider v. State, 89 Tex. Cr. R. 192, 230 S. W. 146; Ex parte Slaughter, 92 Tex. Cr. R. 212, 243 S. W. 478, 26 A. L. R. 891; Ex parte Carrigan, 92 Tex. Cr. R. 309, 244 S. W. 604; Dockery v. State, 93 Tex. Cr. R. 220, 247 S. W. 508; I. & G. N. Ry. Co. v. Mallard (Tex. Com. App.) 277 S. W. 1051; Hallman v. State, 113 Tex. Cr. R. 100, 18 S.W.(2d) 652. Also see article 6 of the Texas Penal Code, 1925 Revision.

However, defendants contend that, regardless of the decision in the Connally Case, articles 1580 and 1581 are rendered constitutional by articles 5150 and 5179 of the Revised Civil Statutes of the State of Texas, 1925 Revision, which statutes also relate to labor and are asserted to be in pari materia and accordingly to be construed together with the criminal statutes. Article 5150 confers on the Commissioner the power to issue subpœnas and take testimony in all matters relating to the duties required, by title 83 of the Civil Statutes, of the Bureau of Labor

Statistics. Article 5179 relates, substantially, to sanitary and health conditions in factories, mines, workshops, and other establishments where five or more persons are employed, and confers on the commissioner the authority to enter such places for the purpose of investigating, to issue written orders directed to the owner, manager, etc., for the correction of any condition caused or permitted in or about the place in violation of the law. Such orders are declared to be prima facie valid, and, unless complied with, the commissioner is authorized to close the place until such time as the condition is corrected. Article 5180 provides for an appeal from such an order to a court of competent jurisdiction.

It is contended that the effect of these statutes is to give the commissioner power to hold a hearing such as was held in this case and determine the current wage rate in the locality. We think it perfectly obvious that the statutes neither accomplished, nor attempted to accomplish, any such result. On the contrary, they were intended to relate to the supervision of sanitary and health conditions in the places designated. However, were they accorded the full significance contended for, the error lurking in the proposition is not far to seek. There is nothing in articles 1580 or 1581 of the Penal Code which says that the "current rate of per hour wages for like work in the locality" shall be the rate promulgated by the commissioner after such a hearing. The employer would be in no way protected under the statutes by following the judgment of the commissioner as to what constituted the proper rate. He would be just as safe in following his own opinion, as in the last analysis, under the statutes attacked, the question as to what is the current rate in the locality would have to be determined by a court or jury in each case as it came up. His only protection in following the decision of the commissioner would lie in the fact that the commissioner himself might not elect to institute the prosecution. The rights of the parties cannot be permitted to hang on such an arbitrary and slender thread as this.

In the Connally Case the commissioner of labor attempted to make an investigation concerning wages paid, just as the commissioner did in this case. He there claimed to be acting under a statute of Oklahoma which imposed on him the duty of carrying into effect all laws with relation to labor. After his wage scale was promulgated, he

threatened prosecution, just as the commissioner did in this case. The Supreme Court of the United States, brushing aside his contentions, held that the statute on its face was unconstitutional. We feel that we are bound by that decision.

In view of the agreement of the parties to submit this matter on the merits, no order will be made with regard to the interlocutory injunction applied for, but a final decree will be entered enjoining defendants as prayed in plaintiffs' original bill. This decree may be prepared by solicitors for plaintiffs, and, after submission to solicitors for defendants, presented to the court for final settlement and entry.