## J. H. PRIDGEN ET AL. V. R. C. WARN ET AL.
### No. 2909.

1. **Homestead, Rural and Urban.**—See facts and discussion thereon resulting in establishing the right of Pridgen and wife to a rural homestead, consisting of 10 acres on which is the residence and balance in cultivation and 190 acres lying three-quarters of a mile distant from the residence. Pridgen carried on a small store in a house owned by his wife in adjoining village of Pleasanton, was postmaster and railway station agent, besides cultivating his farm in part by his own labor.

2. **Vendor's Lien—Waiver by Independent Security.**—When land is sold on credit and the vendor takes any independent security for the debt the presumption, in the absence of evidence of some agreement to the contrary, is that the lien has been waived. See example.

3. **Same—Case Adhered to.**—Hicks v. Morris, 57 Texas, 658, adhered to. The maker of a vendor's lien note borrowing money for the purpose of taking up the lien note made a mortgage upon the land and executed his note to secure the loan, the money so obtained being applied to take up the lien note, there was no time in which the lien did not continue upon the land; *held,* that the vendor's lien existed to secure the note executed for the loan.

4. **Marshaling Securities.**—See decree adjusting homestead rights, and rights of a vendor's lien and mortgage creditor and of judgment lien creditors in and to the land in litigation.

APPEAL from De Witt.   Tried below before Hon. H. Clay Pleasants. The opinion states the case.

*Crain, Kleberg & Grimes* and *Hume & Kleberg,* for appellants.— 1. When a debtor borrows money expressly to pay off his debt there must be an agreement, either expressed or implied, between the debtor and the lender that the debtor intends to substitute the lender in place of the old creditor; and the right of subrogation in such case can not arise by mere operation of law or by means of equitable subrogation, because the lender had no interest in the original debt, and therefore subrogation to exist must be the creature of contract.   Hicks v. Morris, 57 Texas, 658, and authorities; Bouv. Inst., note 1413; Bouv. Law Dic., pp. 554, 555; 3 Pome. Eq. Jur., sec. 1254, and notes; Mosier's Appeal, 93 Am. Dec., 783; 1 Jones on Mort., sec. 874a; Sanford v. McLean, 23 Am. Dec., 773; Sheld. Subr., secs. 240, 241; Oury v. Saunders, 77 Texas, 278.

2.   The question whether defendant J. H. Pridgen exercised the calling or business as the head of his family on the lot in Pleasanton was one of fact dependent upon the nature and extent of such business, and it was material and important for the defendant to show that he was not exercising his principal calling and business on said lot, but was using it only incidentally—especially where such lot is entirely detached from the residence and where a rural homestead is claimed.   Const., sec. 51, art. 16; Miller v. Menke, 56 Texas, 539; Shryock v. Latimer, 57 Texas, 674; Pfeiffer v. McNatt, 74 Texas, 640.

3.   The lot in a town or village exempt as a place of business from forced sale has no connection with the rural home, and the same family is not entitled to both exemptions.   Swearingen & Garrett v. Bassett, 65 Texas, 271; Iken v. Olenick, 42 Texas, 195; Keith v. Hyndman, 57 Texas, 425; Posey v. Bass, 77 Texas, 512.

4.   If property be homestead in fact and in law, lenders of money must understand that liens can not be fixed upon it, and that the declarations of the husband and the wife to the contrary, however made. must not be relied upon, much less the declarations of the husband alone.   42 Texas, 596; 49 Texas, 333; 65 Texas, 471, 723; 59 Texas, 32; 63 Texas, 1; Land Co. v. Blalock, 76 Texas, 85; Morgan v. Morgan, 1 Posey's U. C., 400; 51 Texas, 150.

5.   When a town or village has been laid out and surveyed and its limits are marked on the ground by stones, stakes, etc., as laid out and surveyed, and said town is subdivided in blocks, lots, and streets as marked on the ground, recognized by its inhabitants, and delineated on the map of such town or village, then the limits of said town or village are the limits as delineated and defined on said map and as marked on the ground by stones

and stakes, streets, blocks, and lots; and the limits of such town are then fixed as a matter of fact and can not be extended or contracted by a court in deciding homestead rights by considering the nature and character of the property in question, and the uses and purposes to which it is applied. Iken v. Olenick, 42 Texas, 195; Swearingen v. Bassett, 65 Texas, 271; Keith v. Hyndman, 57 Texas, 425; Rogers v. Ragland, 42 Texas, 422; Taylor v. Boulware, 17 Texas, 79; Posey v. Bass, 77 Texas, 512.

*Proctor & Proctor*, for appellees.—1. The court did not err in holding that appellants were not entitled to a homestead in the lands named in said trust deed as against the *cestui que trust*, Warn. Const., art. 16, sec. 51; Iken v. Olenick, 42 Texas, 195; Keith v. Hyndman, 57 Texas, 425; Brooks v. Chatham, 57 Texas, 31; Mabry v. Harrison, 44 Texas, 286; Dillon v. Kauffman, 58 Texas, 696.

2. The court correctly held the homestead of appellants to be in the village of Thomaston. Iken v. Olenick, 42 Texas, 195; Worcester's Dic., "Village."

3. There are no such extraordinary circumstances in this case as in Taylor v. Boulware, 17 Texas, 74. Ordinarily there can be no blending of homestead rights, so the exemption can be partly in village and partly in the country. Keith v. Hyndman, 57 Texas, 430; Iken v. Olenick, 42 Texas, 195; Taylor v. Boulware, 17 Texas, 79; Swearingen v. Bassett, 65 Texas, 267; Rogers v. Ragland, 42 Texas, 422.

4. The question whether the 190-acre farm was a part of appellants' homestead was a question of fact to be determined by the court. The burden to establish this fact was upon the appellants. The finding of the court in appellees' favor should not be disturbed unless clearly against the great preponderance of evidence. Andrews v. Hagadon, 54 Texas, 576; Keith v. Hyndman, 57 Texas, 430; Carter v. Carter, 5 Texas, 101; Railway v. Schmidt, 61 Texas, 282; Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 1; Greenleve v. Blum, 59 Texas, 124; Briscoe v. Bronaugh, 1 Texas, 340; Jordan v. Imthurn, 51 Texas, 276.

5. Warn, as the purchaser of said vendor's lien note, acquired *ipso facto* the right of subrogation to benefit of Thomas' security. 3 Pome. Eq., sec. 1254; Moore v. Raymond, 15 Texas, 554; De Bruhl v. Maas, 54 Texas, 464; White v. Downs, 40 Texas, 225.

6. The lender of money to pay purchase money note on land, at the payee's instance and promise that the land shall secure said lender, has by subrogation the same rights as were he the assignee of said purchase money note. Hicks v. Morris, 57 Texas, 663; Build. Assn. v. Thompson, 32 N. J. Eq., 132; Carr v. Vermule, 10 Cal., 380; Wilson v. Brown, 2 Beas., 277; Morgan v. Hammett, 23 Wis., 31; Lockwood v. Marsh, 3 Nev., 138; King v. McVicker, 3 Sund. Ch., 192; Caudle v. Murphy, 89 Ill., 352; Sheld. on Subr., secs. 8, 19, 247, 248.

7. The homestead right does not attach until the land is paid for. Such equities and encumbrances as exist by reason of such unpaid purchase money may be adjusted by the husband by substituting a new lien. Gillum v. Collier, 53 Texas, 592; Dillon v. Kauffman, 58 Texas, 696; Thorn v. Dill, 56 Texas, 145; Chipman v. McKinney, 41 Texas, 76; Mabry v. Harrison, 44 Texas, 286; Farmer v. Simpson, 6 Texas, 303; Clements v. Lacy, 51 Texas, 150; Ray v. Clarke, 75 Texas, 32; Flanagan v. Cushman, 48 Texas, 247; Thomp. Home. Ex., sec. 330, *et seq.*

GAINES, ASSOCIATE JUSTICE.—This action was brought by Warn, one of the appellees, against J. H. Pridgen and Maggie Pridgen, his wife, and A. Levi, G. A. Levi, and C. G. Levi as partners composing the firm of A. Levi & Co. The cause of action was two promissory notes executed by J. H. Pridgen to appellee Warn, both dated January 3, 1884—one for $1500, payable twelve months after date, and the other for $750, payable January 1, 1886. The plaintiff also claimed that the notes sued upon were given for the purchase money of certain lands which were described in the petition and which were alleged to have been bought by Pridgen of one Thomas; that the plaintiff had become subrogated to Thomas' rights as vendor to enforce the lien upon the land, and that Pridgen at the time of making the notes had executed a deed in trust upon that and other land to secure their payment. It was also alleged that subsequent to the execution of the deed in trust Levi & Co. had caused the mortgaged premises to be sold as the property of Pridgen, by virtue of an execution against him, and at the sale had become the purchasers thereof. Levi & Co. were made defendants as purchasers subsequent to the plaintiff's lien, and Maggie Pridgen was joined as defendant upon the ground that she was asserting a homestead right in the lands.

Defendants Pridgen and wife denied the existence of the vendor's lien and claimed that 190 acres of the land was a part of their homestead, both at the time of the execution of the deed in trust and at the subsequent time when Levi & Co. acquired their rights upon it by the record of an abstract of their judgment. Levi & Co. answered and claimed the lands under their purchase at the sheriff's sale.

The court found that the defendants Pridgen and wife were not entitled to hold any part of the property as their homestead, that the plaintiff was entitled to claim a vendor's lien upon it for a part of his debt, that the plaintiff had a lien by reason of his mortgage upon all the property, and that the defendants Levi & Co. were entitled to recover all the lands purchased by them, subject, however, to the plaintiff's lien.

There are several assignments of error, but the result of the case in this court mainly depends upon the determination of two questions: (1) Were appellants entitled to claim a part of the lands as their homestead?

(2)   Did a vendor's lien exist upon any part of the land for the payment of plaintiff's debt?

The first question resolves itself into the inquiry whether the homestead of Pridgen and wife was rural or urban.   If the latter, it was confined to a lot or tract of 10 acres of land upon which he resided, adjoining the town of Thomaston, and a lot in that town, the separate property of his wife, upon which he had carried on a mercantile business. If the appellants were not restricted to the claim of a town homestead, then they are entitled to an exemption of 200 acres, provided the land is used by them in connection with the family residence for the support, comfort, and convenience of the family.

What constitutes the town of Thomaston the evidence does not fully disclose.   But it is shown that it is a railway station, and that when the Southern Pacific Railway was constructed to the place in 1872 or 1873 the railway company laid the ground off into streets, blocks, and lots. Neither the number of residences nor the population is shown. We know, however, the defendant Pridgen was the postmaster at the town and that his salary amounted only to the sum of $13, and also that he served the railway company as a station agent and that his sole compensation was a pass over the road.   About the time the town was laid out Pridgen became the owner of 10 acres of land upon which he has ever since resided. This land was also used for farming purposes.   Subsequently he acquired the land upon which appellee Warn claims a lien.   It lies about three-quarters of a mile from his residence, and the 190 acres thereof now claimed by appellants as a part of their homestead was before the execution of the deed in trust to Warn, and long before Levi & Co. recorded the abstract of their judgment, put in cultivation, and has ever since been cultivated by Pridgen in person and by tenants in order to aid in the support of his family.

In the store house on the lot owned by his wife he carried on what would seem to have been a very small mercantile business, and the evidence indicates that while his business as a merchant decreased his farming operations became more extended.

There was testimony tending to show that the farm was the main reliance for the support of his family.   But should these considerations be laid out of the case, the question would still recur whether or not there was such proof that the residence of Pridgen was within a "town," within the meaning of that word as used in the Constitution, as should restrict his homestead claim to the land upon which he resided and the lot upon which his business was carried on.   We are of the opinion that the question must be answered in the negative.

The case of Posey v. Bass, 77 Texas, 512, involved a similar question. In that case, as in this, the town as laid out and platted had been extended to the boundary of the land upon which Posey resided, and it

was incorporated with limits embracing the appellants' residence as well as much other land claimed by them as a rural homestead. In that case, as in this, the head of a family carried on business in the town and owned an interest in the house in which it was transacted.

Leaving out of view the fact that the land claimed as a homestead in that case lay in one body, while in this it is claimed· upon two tracts distinctly.separated, this is in every aspect a stronger case of a rural homestead. It may be doubted whether, but for the fact that a postoffice and a railroad station were established there, the place known as Thomaston was of sufficient importance to have received a name. The evidence shows that it was not incorporated. That the population and business were inconsiderable is evinced by the fact that Pridgen was enabled to cultivate his farm in part in person at the time that he performed the duties of postmaster and of agent of the railroad station. His place of residence was not even within the limits of the prospective town as laid out; on the contrary, there was no satisfactory evidence to show that the ground laid out for the town had ever been occupied by inhabitants, much less that the population had ever extended so as to surround his residence or otherwise to include it within the actual town.

It did not appear in the case cited that the appellant there labored in person upon his farm; and we are of the opinion the fact that the land claimed as a homestead in this case consists in two separate parcels should make no difference in the determination of the question. The Constitution provides that the homestead may consist of two distinct tracts; and the evidence shows, as we think, such use of the 190 acres as entitled it to be considered a·part of the home property. Were there no question of a town homestead there could be no doubt that the appellants could claim the two tracts.

It follows from what has been said that we are of the opinion that the court erred in holding that the appellants were not entitled to claim the rights of a homestead in the 190 acres of land in controversy.

This brings us to the second question, Did the court err in its holding upon the question of the vendor's lien? This lien is claimed by Warn upon a tract of 408 acres of land bought by Pridgen of William Thomas. The tract includes only 100 acres of the land claimed by appellants as a homestead. Pridgen bought the land upon a credit and executed for the purchase money three promissory notes for $600 each. When the first note fell due he borrowed of Warn $1500 for the purpose of paying that and other debts owed by him. When the transaction was completed the money was left in Warn's hands to pay the note, and he subsequently paid it. In consideration of the loan Pridgen executed his note to Warn for the amount and secured it by a chattel mortgage upon certain personal property. When the second note fell due, for the purpose of paying it Pridgen borrowed of Warn the further sum of $750, and in order to se-

cure that and the previous loan gave him a deed in trust upon all the lands, including the 408 acres which were bought of Thomas and for which the note that was to be paid was given. In pursuance of the contract Warn paid that note. The third note was paid by Pridgen.

The court below held that Warn was not subrogated to the lien of Thomas as to the first note paid by him, and we think that holding was correct. There was no express agreement between the parties to that effect. The loan being for a much larger sum of money than was necessary for the payment of the note, and being secured by a chattel mortgage, the presumption is that the lien was waived.

. When land is sold upon a credit and the vendor takes any independent security for the debt the presumption, in the absence of evidence of some agreement to the contrary, is that the lien has been waived; and we see no reason why the same rule should not apply to a transaction like that under consideration. The party having taken one security, the reasonable inference is that he does not intend to rely upon or to claim another. By agreement between the creditor and Warn the latter might have been substituted to the rights of Thomas, the original creditor (Fievel v. Zuber, 67 Texas, 275), but there was no such direct agreement. Neither was there any express agreement that Warn should have a lien upon the property sold by Thomas to Pridgen.

But as to so much of the money as was borrowed to pay the second note the court held that Warn was subrogated to Thomas' lien, and we are of opinion that that holding was also correct. The case of Hicks v. Morris, 57 Texas, 658, presented substantially the same question as that now under consideration. In that case Morris owed a debt for the purchase money of land, and a lien had been retained to secure its payment. He applied to Hicks for a loan of money to pay it, and Hicks having agreed to the loan, brought him a note for the amount together with a mortgage upon the land to secure its payment. Thereupon Hicks accepted the note and mortgage and lent him the money. Subsequently a new note was given for the amount of this note and interest, which expressed upon its face that it was executed for the purchase money of the land. The previous note and mortgage were delivered to Morris and were marked cancelled.

When Morris executed the first note to Hicks there was no express agreement that he should be subrogated to the rights of the holder of the note which the borrower intended to pay. The suit was brought by Hicks upon his second note, and he sought not only judgment for his debt but the enforcement of a lien upon the land for its payment.

The court, in a very elaborate opinion by Chief Justice Gould, held that the plaintiff was substituted to the rights of the original vendor of the land. The present is the stronger case for the application of the doctrine there announced. In that case the money was borrowed and some time

elapsed before the original note was paid with it—though the court held that the loan and the payment should be deemed one transaction. In this case the note and mortgage were executed to Warn before he paid the money to Thomas, and there was no instant in which the lien did not continue to exist on the land.

In accordance with the conclusions expressed in this opinion, the judgment of the court below will be reversed and here rendered for appellant Warn for the amount of his debt and interest, and enforcing the mortgage lien upon all the lands described in the deed in trust except the 190 acres claimed by appellants as a part of their homestead, and enforcing the vendor's lien upon the 100 acres so claimed bought from Thomas for the amount of the second note paid off by Warn, as found by the court below.

Judgment will be rendered for appellees Levi & Co. for all the land claimed by them except the 190 acres found to be part of appellants' homestead, as to which they will take nothing; this recovery, however, to be subject to the lien of appellee Warn as herein found to exist. The land found subject to Warn's mortgage lien will first be sold for the payment of his debt, and should any balance of his debt remain, then the 100 acres found subject to the vendor's lien shall be sold for the payment of such balance, but the amount to be applied from the proceeds of such sale shall in no case exceed the amount of the second note paid off by him as determined in the judgment.

*Reversed and rendered.*

Delivered February 13, 1891.