## In re EIKEL.

(District Court, W. D. Texas, Austin Division. June 19, 1922.)

### No. 858.

1. **Bankruptcy ⬰228—Bankrupt's cross-petition to review referee's order denied, where trustee's petition broad enough to cover same issues.**

   A bankrupt's cross-petition to review a referee's order will be denied, where trustee's petition to review is broad enough to cover the rights of creditors and bankrupt.

2. **Bankruptcy ⬰396(5)—Business homestead in one city and residence homestead in another city may both be exempt.**

   Where a bankrupt was the head of a family, his place of business was in one city, his residence was in another city, and the value of both did not exceed $5,000, both were exempt under Const. Tex. art. 16, § 51, exempting a homestead in a city, town, or village not exceeding the value of $5,000, provided it is used as a home or place of business of the head of the family, in view of the purpose of the homestead provision as shown by Acts Tex. 1860, c. 38, and Constitutions of 1845, 1861, 1866, 1869, and 1876.

3. **Homestead ⬰13—Under Texas Constitution, homestead exemption cannot apply both to rural property and city lots.**

   Under Const. Tex. art. 16, § 51, a homestead exemption cannot apply both to rural property and city lots.

4. **Statutes ⬰181(1)—Construed according to legislative intent.**

   Where the construction of a statute is uncertain, the legislative intent must be ascertained and followed, as judicial legislation must be avoided.

5. **Statutes ⬰188—Singular and plural numbers interpreted as meaning either.**

   In construing statutes, singular and plural numbers should be interpreted as meaning either the singular or the plural.

In Bankruptcy. In the matter of the bankruptcy of Albert Eikel. On separate petitions by trustee and bankrupt for review of referee's order. Order affirmed.

George E. Shelley, of Austin, Tex., for trustee.

O. W. Sandstrom and James H. Hart, both of Austin, Tex., for bankrupt.

Spence, Haven & Smithdeal, of Dallas, Tex., White, Wilcox & Graves, of Austin, Tex., and Mantor & Briggs, of Taylor, Tex., for creditors.

---

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WEST, District Judge. The bankrupt in his schedules claims as exempt his home—residence—in New Braunfels, Comal county, Tex.; also his place of business in Taylor, Williamson county, Tex., some 80-odd miles distant from the place of residence. The trustee declined to set apart as exempt this place of business, because "in doubt concerning the validity of said claim," unless instructed by the court. Thereupon the bankrupt filed exceptions thereto, and moved that the trustee be ordered to amend his report of exemptions, and be required to include therein his business house or "homestead" at Taylor, Tex. Upon notice and hearing the referee on May 22, 1922, ordered that the bankrupt's motion be overruled, but that bankrupt's exceptions to the trustee's report be sustained, and the report amended to include in the list of exempt property bankrupt's business homestead in Taylor, and that the same be delivered to him.

[1] The trustee seeks review because of referee's error in declaring the storehouse property exempt to the bankrupt as his "place of business" under the Constitution of the state of Texas, in that (a) bankrupt's residence and domicile is in New Braunfels, and that his business property is situated in a different city, to wit, Taylor, Tex., more than 80 miles distant from his residence; and (b) the property in question was not used by the bankrupt as a place of business, so as to entitle him to the exemption. The bankrupt by cross-petition seeks review, because of referee's error in overruling his motion to include his business homestead at Taylor, Tex., in the trustee's report of exemptions, and in approving such report after being so amended, because (a) the trustee should have set apart property claimed by the bankrupt as exempt, and, failing, the referee should have done so; and (b) the bankrupt having made his claim for the exemption of this property in his schedules, the trustee was without power to fail or decline to set apart the exemption claimed "because he was in doubt," thereby tendering two issues in contest of bankrupt's claim. The cross-petition for review is without merit. The questions presented are academic. The issues tendered by the trustee's petition are broad enough to cover the rights of creditors and the bankrupt. Accordingly the bankrupt's cross-petition for review is denied.

[2] At the request of the bankrupt and the trustee the referee has made his findings of fact and conclusions of law. After a careful reading of all the testimony, the referee's findings of fact are approved. From the facts so found he concludes as a matter of law that the New Braunfels residence property is bankrupt's residence homestead, and that the lot in Taylor, Tex., with improvements thereon, is his business homestead, and that both are exempt under the provisions of section 51 of article 16, Constitution of the state of Texas. Conceding the facts as found to be true, can the bankrupt as a matter of law have his *residence* homestead in one city, and at the same time have his *business* homestead in another city; or, stated in another way, must one's urban residence and business homestead be in the same city? The courts have not decided the precise question. It can only be answered by giving a right construction to that section of the Con-

stitution under which the right of exemption is claimed by the bankrupt and contested by the trustee and creditors. It is as follows:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon: Provided that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family."

The Constitution concerns itself with natural "inalienable" rights. The instinct to increase and multiply is natural. It is characteristic of all animate nature. It is strongly impressed in the animal man, whose civilization has given the sense a high development. It may be conceded that the head of the family has by nature and instinct the right to protection and shelter for himself and his family. Instinct and nature oblige him to provide himself and his brood with food and raiment. In the language of our Constitution, he has a right to a home for himself and family, and likewise the right to that place of business which enables him to provide for their natural wants. These recognized elemental rights are the foundations of reason upon which laws enacted to secure them to the family must be tested, when construction or interpretation becomes necessary. Being necessary to the preservation of life, the Constitution guarantees that the home and the means of supplying the family with food and clothing shall be exempt from seizure or forced sale in satisfaction of the demands of creditors. The homestead rights and the rights of creditors are placed in the balance, and the makers of the Constitution, with conscientious regard for the higher natural rights, yet in full recognition of the sacredness of contractual obligations, have struck their balance and confined within reasonable, but arbitrary, limits the extent to which the homestead right may have application in priority over contract right. The makers of the Constitution of 1876 had these considerations in mind. The earlier declarations of the fundamental law in protecting the family are instructive, and serve to indicate the settled purpose and to define the limits of this protection.

The Constitution of 1845 (article 7, § 22) provides for a rural homestead not to exceed 200 acres of land, and an urban homestead of a lot or lots not to exceed $2,000 in value. The act of 1860 (Acts 8th Leg. c. 38) limited the valuation of the urban homestead to $2,000 at the time of designation. The Constitutions of 1861 and 1866 made no change in the provisions as they stood under the Constitution of 1845. The Constitution of 1869 (article 12, § 15) fixed the rural homestead as not exceeding 200 acres of land, and the urban homestead to a lot or lots not exceeding $5,000 in value at the time of designation as a homestead. The Constitution of 1876 limits the rural homestead to 200 acres of land in one or more parcels, with the improvements; the urban homestead to consist of a lot or lots not to exceed in value $5,000 at the time of designation, but without reference to value of improvements thereon, provided that the same shall be used for the purpose of

home or place to exercise the business or calling of the head of the family.

The makers of the Constitution had in mind the purpose to preserve to the family the natural or God-given right to live, and also had in mind that the right of contract and the right of creditors to proceed against debtor's property should, within reasonable limitations, be safeguarded. This intention is clearly expressed in Pryor v. Stone, 19 Tex. 373, 70 Am. Dec. 341 (1857), in the following language:

"The limitation of homestead, in a town, is not to the number, but the value, of the lots. It is not declared that the lots shall adjoin or be contiguous to each other. All that, by fair construction of the language, is required to entitle the property to exemption, is that the property should be used for the convenience or uses of the head or members of the family. The exemption should not be construed as reserving merely a residence, where a family may eat, drink, and sleep, but also a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family. The office of a lawyer or shop of a mechanic is necessary to the convenience and success of their respective profession or trade, but it would frequently be of much inconvenience or detriment that this shop or office should be part of the same building, or even on the same lot, with the residence of the family. The exemption is not thus to be restricted in its benefits. It allows any number of lots, not to exceed $2,000, and it cannot be material how many, or how far, or how near or remote from each other, may be the lots occupied for the convenience of the family and for the prosecution of the business or employment of its head or members."

In Waggener v. Haskell, 89 Tex. 436, 35 S. W. 1, the rule announced in Pryor v. Stone was again approved by Associate Justice Denman's opinion:

"If the head of a family be a merchant, in addition to his home, his storehouse is exempt; if a banker, his banking house; if a blacksmith, his shop; if a lawyer or doctor, his office; if a farmer, his farm; if a gardener, his garden, etc.—the only limitation as to quantity, in case of urban property, being one of value."

The homestead provisions of the Constitution of 1876 have been construed and interpreted in many cases decided by our highest courts. One of the first questions was whether an urban homestead might include disconnected lots separately occupied by the head of the family as a home and place of business in the same town. The courts declared that the Constitution was primarily concerned with securing to the family its home residence, and to the head of the family the place of business or calling; one seeming to be as necessary as the other. Substantially that interpretation is given by many authorities, the leading being Miller v. Menke, 56 Tex. 539; Wright v. Straub, 64 Tex. 64; Waggener v. Haskell, 89 Tex. 435, 35 S. W. 1; Atkinson v. Phares, 20 Tex. Civ. App. 150, 49 S. W. 653; Dignowity v. Lindheim (Tex. Civ. App.) 109 S. W. 966; Rock Island Plow Co. v. Alten, 102 Tex. 366; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 650.

[3] The homestead exemption cannot apply both to rural property and city lots. This is held in many cases, and may be considered as settled law. The earlier of the decisions so holding are Keith v. Hyndman, 57 Tex. 425; Swearingen v. Bassett, 65 Tex. 267; Pridgen

v. Warn, 79 Tex. 588, 15 S. W. 559. These decisions are anchored to the express language of the Constitution. Specific limitations are set down in that instrument in defining rural and urban homesteads. Under the terms of the Constitution one may not hold his place of business in a city as his homestead and at the same time claim the right of exemption upon his rural homestead.

The Supreme Court of Texas in Iken & Co. v. Olenick, 42 Tex. 197, through Justice Moore (1875), says that the constitutional limitations between the two classes of homesteads express themselves in one instance as to extent and in the other instance as to value, for instance, that the rural homestead is not restricted as to value, but is restricted as to acreage; that the limitation on the homestead in town or city is as to value only, providing only that the lot or lots shall at the time of their designation, without reference to improvements or increased value, not exceed $5,000. Justice Moore draws the inevitable conclusion that, by reason of the limitations imposed by the Constitution, the homestead right and exemption declared by the Constitution has application only to either a home in the country or in the city, but not in recognition of any claim for the homestead right in both. Thus it appears that the reasonable, though arbitrary, limitation as to value and as to acreage have consistently and invariably been followed by the courts of Texas.

In this case the facts are that the bankrupt was the head of a family; that his business homestead, used by him as a place of business, was situated upon a lot in the city of Taylor; and that his residence homestead was situated on lots used by him as a family residence in the city of New Braunfels, Tex., and that at the time of the designations these lots did not exceed in value $5,000, exclusive of improvements.

[4] The Constitution provides that "a homestead in a city, town or village shall consist of a lot or lots not to exceed in value," etc. It would seem a strained construction to limit the meaning to a single city, town, or village, in the sense that both the home and the place of business *must* be in the *same* city, town, or village. Judicial legislation must be avoided. A canon of construction, where statutes are uncertain, is to look to the purpose and intent of the law-making body. the main purpose of the Constitution in declaring the exemption was to secure to the head of the family a home and place of business, so that the family might be assured food and shelter. Any construction that would serve to deny to the head of the family the rights plainly accorded runs counter to clear intent.

[5] Another rule of statutory construction is that the singular and plural numbers should be given interpretation as meaning either the singular *or* the plural. This rule may have application here. The decisions hold that the city lots of the urban homestead may be separate as in this instance. Does it, then, make any difference how widely separated, if the requisite facts as to user exist? The bankrupt was actually exercising his business and calling in the conduct of his hardware store at Taylor, Tex. Unless it be perfectly clear and definite from the reading of the Constitution that it limited the right of ur-

ban homestead to the same town or city, a declaration otherwise would cause a failure of the purpose and intent of the makers of the Constitution. The constitutional provision as to value in the one instance, and as to acreage or area in the other instance, was evidently considered to be fair and reasonable, having due regard for the necessities of a home, and in protection of the interests of the creditors. Those limitations have stood against invasion for three-quarters of a century. The courts of highest resort of this state have consistently and uniformly given effect to the purpose and intent that actuated the people's representatives who wrought the Constitution. To deny the bankrupt his rights of the homestead as to residence in New Braunfels and as to place of business or calling in another city, Taylor, would deny him rights accorded by the Constitution.

It is the opinion of the court, and it is so held, that the order of the referee of May 22, 1922, be in all things ratified, affirmed, and approved. A formal order in accordance with this opinion will in due course be entered.