---

### In re BUIE.

(District Court, N. D. Texas, Dallas Division. March 2, 1923.)

#### No. 1708.

1. **Homestead ⬅165—Farmer may engage in other business without losing rural homestead.**

   A farmer, who is engaged personally and through hired help and share croppers in farming, may run a general store to furnish provisions, clothing, and implements for those who work his farm and others, as well as he may operate a gin or blacksmith shop or a tanyard, without losing his right to claim a rural homestead under Texas Const. Tex. art. 16, § 51, as that section has been construed by the state courts.

2. **Homestead ⬅70—Use of each of six tracts held to impress them with "homestead" character.**

   Where a bankrupt had six tracts of land, aggregating less than 200 acres, on two of which he had his residence and a general store and

blacksmith shop, and the others of which he farmed, either personally or through hired help or share croppers, his use of all of the tracts was sufficient to impress on them the character of a rural homestead, within Const. Tex. art. 16, § 51, which, as construed by the courts of that state, permits separate tracts to be claimed as a rural homestead.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead.]

3. **Homestead** ⬦12—**Texas Constitution intends to set aside homestead for benefit of families.**

The provision of the several Constitutions of Texas of 1845, 1860, 1861, 1866, 1869, and 1876, allowing a rural homestead of 200 acres, established the intent of the makers of the Constitution beyond mistake to afford an asylum for the families, the women and children, of the homesteaders.

4. **Homestead** ⬦63—**Community of 17 persons engaged in farming is not "village," within homestead provision.**

A community composed of 17 persons, grouped around a cross road to which a name had been applied by the proprietor of a general store, but all of whom were engaged in farming, either exclusively or in connection with the operation of a general store, blacksmith shop, etc., in which community there was no post office, school, or other improvements, except the stores, shop, and residences, was not a 'village, within Const. Tex. art. 16, § 51, providing that the homestead in a city, town, or village shall consist of a lot or lots not exceeding $5,000 in value, whether the word "village" is limited to incorporated towns or not (citing Words and Phrases, First Series, Village).

In Bankruptcy. In the matter of the bankruptcy of Isaac Daniel Buie. On bankrupt's application for a review of an order of the referee denying the bankrupt's claim for a rural homestead exemption. Referee's findings disapproved, and exemption allowed.

Wynne & Wynne and Cooley & Crisp, all of Kaufman, Tex., for bankrupt.

Etheridge, McCormick & Bromberg, of Dallas, Tex., for trustee.

ATWELL, District Judge. The bankrupt claims as exempt six tracts of land. Tract No. 1 contains 1⅜ acres. Tract No. 2 contains 2¼ acres. Tract No. 3 contains 13 acres. Tract No. 4 contains 66⅔ acres. Tract No. 5 contains 51 acres. Tract No. 6 contains 51 acres. These tracts are close together, and are in Kaufman county, and, aggregating less than 200 acres, are claimed by the bankrupt as homestead.

Tracts 1 and 2 are contiguous. Upon tract 1 is a store building, in which the bankrupt and his wife conducted a country store. Close to the store building, and for use in connection therewith, was a small icehouse or refrigerator, about 6 feet square. Upon tract 2 was the house in which the bankrupt actually lived. There is no fence between the house and the store. Tract No. 3 is about 200 yards from tract No. 2. Tract No. 4 is from one-half to three-quarters of a mile from tracts 1, 2, and 3. Tracts 5 and 6 join, and make one farm of 102 acres, and are about a mile from tracts 1 and 2.

The bankrupt named his store, after he built it on tract 2, "Cedar Vale," and by that name the community is known. It is the point of the intersection of two public roads, one of which goes to the county

site of Kaufman county, and the other of which is known as the Wills Point public road. That the physical facts may be better understood the following plot is inserted:

It will be noticed that the Wills Point road intersects the Kaufman-Canton road from the south, then runs east on the Kaufman road for the distance of the length of the 13-acre Buie tract, and then goes north; the Kaufman road continuing east. At this second intersection of the two roads was situated the bankrupt's store, and just back of it, on the Wills Point road, was the bankrupt's residence, and just back of the residence is a small tenant house belonging to the bankrupt. Just east of the bankrupt's store and on tract No. 2 is a blacksmith shop belonging to the bankrupt. East of that are the remains of an old gin that had burned some time before bankruptcy, and continuing on east is a dwelling belonging to a farmer, situated on his farm.

South of the Kaufman-Canton road is a 178-acre farm belonging to one Kelley, and where the farm corners with Buie's 13-acre tract Kelley has his residence, and a few yards from the Kelley residence on the east is a tenant house, and west of Kelley's residence, and on a little tract sold by Buie out of his 13-acre farm, is the residence of another farmer, who has a 600-acre farm about one-half a mile distant. To the west of that about 50 yards is a tenant house belonging to Buie on his 13-acre farm, and about one-half mile further west is the residence of another farmer on a 135-acre farm.

The referee, in his findings concerning the matter I am now presenting, reported as follows:

"The 1⅞-acre tract is situated on the Kaufman and Canton highway, where it is intersected by the Wills Point public road, in Kaufman county, Texas. On this tract the bankrupt built a store building several years ago, in which he maintained a general store to the date of the petition in bankruptcy. On

this tract was also the bankrupt's private garage and wood pile; also, an icehouse, 6 feet by 6 feet, used in connection with the store, and a blacksmith shop owned by the bankrupt and used during the several years at times as a public shop and at other times as a private shop. The blacksmith shop was usually, and at the time of the filing of the petition in bankruptcy, used as a public shop. The shop is located on a different lot from the store.

"Adjoining this tract is the 2¼-acre tract on which the bankrupt has had his family residence for several years. There is no fence between this tract and the 'store' tract. The bankrupt has resided on this tract since he built the store. The blacksmith shop is on the same side of the road that the store and residence of the bankrupt are on. Between the blacksmith shop and the residence of the bankrupt there was, at the time of the filing of the petition in bankruptcy, a warehouse and a gin site, with the remains of a cotton gin, which had been almost entirely destroyed by fire about a year previously. In addition to the houses referred to, there were five residences on this side of the road within about half a mile. In addition to the residence of the bankrupt on this side of the road, the bankrupt has a tenant house on the 2¼-acre tract, and there were two other farm residences within a radius of about one-half mile—one on a farm of about 200 acres and the other on a farm of about 135 acres, both occupied by the farm owner; also, two other houses.

"On the other side of this road there is, at the intersection of the two roads, a tract of land of about 200 acres on which a Mr. Kelley resides, and on which he also conducts a retail store, the store being conducted in his smokehouse, which is situated in his yard. On this same side of the road, on a tract of about one-half an acre, which tract is out of the 13-acre tract referred to as the tract 3 listed by the bankrupt, resides one H. H. Heidle, who owns a farm of about 600 acres about three-fourths of a mile from his residence. He farms the 600 acres of land and located his residence on the one-half acre tract to get out of the bottom land for his home. These two last-mentioned residences are opposite the bankrupt's store building, just across the road. There are three other residences on the same side of the road as the Kelley store, same being tenant houses, within about 300 yards from the store. One is the tenant house of Kelley on his farm, another the tenant house of the bankrupt on the 13-acre tract, and a tenant house on the Hamilton farm. All of the houses referred to, on each side of the road, with the exception of the tenant houses, have the usual barns and outbuildings."

No plot or subdivision of the land into lots has ever been made. The land upon which the burned gin is located is owned by a company. The population, within a radius of 300 yards of the bankrupt's store building, is 17. The country all through that section of the county, on into the town of Kaufman, is thickly settled. Cedar Vale has no post office, no voting box, no schoolhouse, no church, no railroad, and no improvements, save the ones mentioned above.

At one time, and just before moving to his present residence, the bankrupt lived upon tract No. 4. For several years prior to bankruptcy, the bankrupt conducted a store on tract No. 2. He carried a stock of approximately $4,000 or $5,000, and his annual sales were approximately $10,000 or $15,000, upon which he made a profit of approximately 10 per cent. He farmed tracts 3, 4, 5, and 6; such farming being done by himself and his children and by hired hands and by share croppers. To share croppers he furnished the land and provisions and implements with which to make the crop and received one-half of such crop. From tracts 5 and 6 he secured all of the firewood he burned at his residence. For the purpose of farming these tracts of land, he kept 14 head of horses and the necessary implements.

While he was in the fields his wife ran the store when her health

permitted; at times they had a hired hand in the store, when her health made it impossible for her to be there, and when the bankrupt was in the fields. The bankrupt used his portion of the crops for seed to plant new crops and for the comfort and convenience of himself and his family, and he likewise used said tracts of land to pasture his stock after the crops were gathered.

Upon this state of facts the bankrupt requested the referee to find that the residence of the bankrupt was not in a town or village, as that term is used in the Constitution of the state of Texas, and that the same was situated in the country and is and was a rural homestead, consisting of the several tracts of land referred to above. The referee refused to find as requested and on the contrary found:

"The Cedar Vale community, above referred to, is, and was at the time of the filing of the petition herein, a village, as that term is used in article 16, section 51, of the Constitution of the state of Texas. The bankrupt, having his residence and his principal place of business within this village, and having therefore an urban homestead, is not entitled to the exemption of any rural land as homestead, since under the Texas Constitution one cannot be entitled to a rural homestead exemption in addition to an urban homestead."

While there were some other requests with reference to the findings, and some other refusals on the part of the referee, and while there were some additional findings by the referee, the above statement pictures the controversy.

2. Section 51 of article 16 of the Constitution of the state of Texas, provides:

"The homestead, not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value $5,000, at the time of their designation as the homestead, without reference to the value of any improvements thereon: Provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling of business of the head of a family: Provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

The following propositions seem to be settled beyond controversy in Texas:

(a) A rural homestead may consist of separate tracts of land distant from each other, provided they are used for purposes of home, and used for purposes of supporting the owner and family, even though the land is worked by tenants. Baldeschweiler v. Ship, 21 Tex. Civ. App. 80, 50 S. W. 644; Roberts v. Cawthon, 26 Tex. Civ. App. 477, 63 S. W. 335; Compton v. Woodward (Tex. Civ. App.) 188 S. W. 271; First National Bank v. Porter (Tex. Civ. App.) 204 S. W. 464; Maupin v. McCall (Tex. Civ. App.) 54 S. W. 623; Harbison v. Tennison (Tex. Civ. App.) 38 S. W. 232; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164; Gunn v. Wynne (Tex. Civ. App.) 43 S. W. 290; Medlenka v. Downing, 59 Tex. 32; Baum v. Williams, 16 Tex. Civ. App. 407, 41 S. W. 840.

(b) The mere laying out of contiguous land into streets and their division into blocks and lots will not deprive the homestead of its rural character, nor restrict the rural homestead exemption to the land ac-

tually used; nor is such homestead affected by the head of the family carrying on a business in the town in an office owned by himself. Posey v. Bass, 77 Tex. 512, 14 S. W. 156.

(c) The fact that a homestead is or is not within the corporate limits of a town or village is not conclusive as to whether it is a rural or an urban homestead. Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145.

(d) The object of the constitutional section above quoted is not to protect the house with 200 acres of the most valuable land that might be on a large tract, but to protect the house and farm, tanyard, mill, gin, or whatever had been used in connection with the residence to make a support for the family. H. & G. N. Railway v. Winter, 44 Tex. 597.

(e) One having a rural residence cannot have an urban place of business protected from forced sale, as a part of his homestead. Williams v. Willis, 84 Tex. 398, 19 S. W. 683; Swearingen v. Bassett, 65 Tex. 267; Pridgen v. Warn, 79 Tex. 592, 15 S. W. 559; Dignowity v. Baumblatt, 38 Tex. Civ. App. 363, 85 S. W. 835.

(f) One may not have a business homestead in one town and a residence homestead in another town. In re Eikel (C. C. A.) 285 Fed. 732.

With these established positions in mind, let us return again to the facts. They present no question of estoppel. This is not a case wherein a loan was made, and afterwards the borrower is seeking to avoid such loan by claiming that, when he stated that the land in controversy was not his homestead, such statement ought not to bind him because the lender could have seen that there was such use. Neither is this case one wherein the creditors relied upon the farm lands as potential security for the merchandise they were selling, as the record discloses that the creditors knew, or had reason to believe, that the lands under consideration were in fact the bankrupt's home and would not be subject to their claim.

[1] The case is really and simply a vigorous test of the right of the rural resident to make a nest of several parts, while engaging in more than one effort to afford comforts and conveniences to himself and his family. It cannot be claimed that the blessings of the Texas homestead law accrue merely to the countryman who engages in one avocation. The farmer, who farms personally and through hired help and share cropper, and who runs a general store, out of which come provisions and clothing and implements for those who work on his farms, is, according to my judgment, engaging in sympathetic and not antagonistic avocations, and is entitled to his rural exemptions, as much so as is the farmer who runs a gin or blacksmith shop or a tanyard.

3. The trustee cites, as does the referee, the following cases in support of the decree against the bankrupt's right to have all of the tracts of land exempt: Taylor v. Ullmann (Tex. Civ. App.) 188 S. W. 746; In re Eikel (D. C.) 283 Fed. 286; Mikael v. Equitable Securities Co., 32 Tex. Civ. App. 182, 74 S. W. 67; Martin v. Henly, 83 Tex. 592, 19 S. W. 167; Blackwell v. Lasseter (Tex. Civ. App.) 203 S. W. 619. These cases do not seem to be of that satisfying nature, when fitted to the facts of the case, which is necessary in order to preserve the purpose and spirit of the homestead constitutional provision quoted above.

In Taylor v. Ullmann the facts show that the maker of the notes, which were secured by a mortgage, resided in Iago, a village that contained 25 or 30 families, and which had three general stores, including the one owned by the debtor, a drug store, three saloons, a blacksmith shop, a schoolhouse, and a post office; that the debtor resided upon a tract in that town, and claimed as exempt that tract, as well as a 64-acre tract some distance from the town; that he pastured his hogs, cattle, milk cows, and farm teams on the 64-acre tract. The court held that the use which the debtor made of the 64 acres was sufficient to impress upon it the homestead character, but the debtor lived on the 24 acres in the town of Iago, and that he lived there at the time he placed the mortgage on the 64 acres, and that he was not entitled to a mixed homestead, part urban and part rural, and that therefore the mortgage on the 64 acres was valid.

In Mikael v. Equitable Securities Co., the company brought a suit to foreclose a mortgage on 90 acres of land near Mountain Springs, a village with a population of 100. The debtor had made statements at the time of executing the mortgage that the 90 acres were not a part of his homestead, and at the time that he resided upon a 2-acre tract in Mountain Springs. Mountain Springs contained 6 or 7 residences, 2 stores, a blacksmith shop, a gin house, a schoolhouse, and a church. The town was not incorporated, nor laid off into blocks and lots. The debtor was the postmaster, and likewise kept a store. Upon this state of facts the trial court held that the debtor's homestead was in the town of Mountain Springs, urban, and that therefore he was not entitled to his rural property as a part thereof, and the appellate court merely stated:

"In view of the decisions referred to—Posey v. Bass, 77 Tex. 512, 14 S. W. 156; Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145; Paris Exchange Bank v. Hulen, 21 Tex. Civ. App. 285, 52 S. W. 278—which seem to support the conclusion reached by the trial court, we are not prepared to say that that conclusion was wrong and should be set aside."

Martin v. Henly was a contest growing out of the claim by an insolvent of a homestead interest in a lot, which was owned jointly with another, and upon which the other operated a gin. It was held that the lot was not exempt, since it was owned and in the possession of tenants in common, one of whom was using it for an entirely different purpose. Associate Justice Henry in that case said:

"It is not pretended that the gin lot was used by the defendant as his place of business. The exemption, if it exists at all as the case is now presented to us, depends upon the use of the lot in connection with the family residence and for the convenience and comfort of the family. The main use to which the lot was devoted by its owner had no connection with any homestead purpose. The use of the lot once for penning and fattening defendant's hogs, and to water his cattle and his horse when he owned one at a tank on the lot, if they could in any case be treated as sufficient to impress a lot with the homestead character, cannot be so treated when the interest of the person so using it is only an undivided one, and when the tenants in common are in possession of and using the premises for an entirely different purpose."

In Blackwell v. Lasseter, the only use made of the detached tract was that some grubbed-out stumps, taken from the detached tract, were hauled to the residence tract and used for firewood. The court said:

"The hauling of the grubs to the home on the 31 acres [the residence tract], and [their] use there, was a mere incident to the clearing of the land. The land was grubbed for the purpose of preparing it for cultivation, and not to obtain the grubs for any use at the home. It is the principle use which must be looked to in determining whether or not the land is impressed with the homestead character."

[2] It is thought that the use made of each tract claimed by the bankrupt in this case is sufficient to impress the homestead character upon each of the detached tracts, as measured by the authorities cited above. In the case of Pridgen v. Warn, 79 Tex. 588, 15 S. W. 559, the Supreme Court of Texas, speaking through Associate Justice Gaines, treated a case which is almost identical with the one we are now considering. Pridgen and his wife resided upon a tract of 10 acres joining the little town of Thomaston. On another lot in the town, the separate property of his wife, Pridgen carried on a mercantile business. About three-quarters of a mile from Pridgen's residence was the 190 acres in controversy. Thomaston was a railway station. The ground had been laid off into streets, blocks, and lots. Neither the number of residences nor the population is shown. Pridgen was postmaster of the town. He was station agent. In the storehouse on the lot owned by his wife he carried on a small mercantile business. Judge Gaines said:

"If the appellants [the Pridgens] were not restricted to the claim of a town homestead, then they are entitled to an exemption of 200 acres, provided the land is used by them in connection with the family residence for the support, comfort, and convenience of the family."

Again he said:

"It may be doubted whether, but for the fact that a post office and a railroad station were established there, the place known as Thomaston was of sufficient importance to have received a name. The evidence shows that it was not incorporated. That the population and business were inconsiderable is evinced by the fact that Pridgen was enabled to cultivate his farm in part in person at the time that he performed the duties of postmaster and of agent of the railroad station."

In First National Bank of Sweetwater v. Porter (Tex. Civ. App.) 204 S. W. 464, the court said:

"If it be determined that the home upon the 7.95-acre tract was rural, then it is necessary further to determine whether or not there had been such use of the 160 and 22 acre tracts by Porter as would impress the same with the homestead character. * * * If the home at Hylton was rural, Porter had the right to treat the detached 160 and 22 acre tracts as a part of the homestead, if the acreage of the three tracts was less than 200. There is an abundance of evidence to show such use of the detached tracts as would have impressed the same with the homestead character at the time the deed of trust was executed."

The facts in that case showed that Porter lived in Hylton; that about 2 miles from there he had two other tracts of land, one containing 22 acres and the other 60 acres; that Hylton was a remote and very small hamlet or village in Nolen county; Porter was engaged in the mercantile business in Hylton; that he raised crops and gardens upon the 22-acre and the 160-acre tracts for the use of the family and by the labor of the family.

In addition to these citations the attorneys for the bankrupt cite the following: Cotten v. Friedman (Tex. Civ. App.) 158 S. W. 780; Crisp v. Thrash (Tex. Civ. App.) 52 S. W. 92; Autry v. Reasor, 102 Tex. 123, 108 S. W. 1164, 113 S. W. 748; Baldeschweiler v. Ship, 21 Tex. Civ. App. 80, 50 S. W. 644; Spaulding v. Haley, 101 Ark. 296, 142 S. W. 172; Clements v. Crawford, 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149.

[3] 4. There can be no mistake as to the intent in the minds of the makers of the Texas Constitution, because in 1845, and again in 1860, and again in 1861, and again in 1866, and again in 1869, and again in 1876, they stood for the 200 acres of land. They had in mind the affording of an asylum and of preserving a place for the families—the women and children.

[4] 5. It will be noticed that the first sentence in section 51 uses the words "town or city." This relates to the homestead of 200 acres. The same section, in the next sentence, provides that the homestead in a "city, town or village" shall consist of a lot or lots. I am not sure that there was any reason for the failure to use the word "village" in the first sentence; but, be that as it may, I do not think that the little community shown by the record in this case is a "town or village," within the sense that it would make the bankrupt's residence there an urban residence, as distinguished from a rural residence. Article 1033, Complete Texas Statutes, provides:

"When a town or village may contain more than 400 or less than 10,000 inhabitants it may be incorporated as a town or village."

Again, article 762 of the Complete Texas Statutes provides:

"Any incorporated city, town or village in this state containing 600 inhabitants or over," etc.

The dictionaries give various definitions of the word "village," and in Words and Phrases I find the following judicial determinations:

"A village is a subordinate branch of the civil government." Weismer v. Village of Douglas, 6 Thomp. & C. (N. Y.) 514.

The word "village," employed in the statute allowing one as a homestead a lot in any village, etc., did not include lots which had never been plotted as village lots, and were not found upon any reported town plot, but were merely subdivisions of a farm made for a purpose foreign to that of a plot for sale or for village settlement, though within a hamlet or agricultural residence. Bouchard v. Bourassa, 57 Mich. 8, 23 N. W. 452.

The word "village" imports only a municipal corporation organized by some special act or under some general law. Revised Statutes of Wisconsin 1898, § 4972.

The word "village" includes every place laid out in lots or blocks, other than a cemetery and incorporated cities. Cobbey's Annotated Statutes of Nebraska 1903, § 10407.

The term "village," as used in the Constitution, providing for a homestead in a city, town, or village, should be given its ordinary and usual significations. Turning to the lexicons, we find that Webster defines a village to be a small assemblage of houses, less than a town or city, and inhabited. chiefly by farmers and other laboring people. The definition given by Bouvier is any small assemblage of houses for dwellings or business, or both, in the country, whether they are situated upon regularly laid out streets or lots or not. Mikael v. Equitable Securities Co., 32 Tex. Civ. App. 182, 74 S. W. 67.

A village is a collection of houses collocated after something like a regular

plan in regard to streets and lanes, without intervening farm lands. In re West Philadelphia, 5 Watts & S. (Pa.) 281.

A "village" is a place where there is a station house, a warehouse, a store, a blacksmith shop, a post office, and five or six dwelling houses, whether they are situated upon regularly laid out streets and alleys or not. Toledo, W. & W. Ry. Co. v. Spangler, 71 Ill. 568; Illinois v. Williams, 27 Ill. 48.

A "village" is defined to be any small assemblage of houses in the country; a collection of houses collocated after a regular plan in regard to streets and lanes. In re Incorporation of Edgewood, 18 Atl. 648.

The term "village" is more specific than the term "neighborhood," but each congregation of individuals living in close proximity, as is customary in village life, must be treated as a village for the purpose of the statute. State v. Meek, 26 Wash. 405, 67 Pac. 76. While often used to apply to any small assemblage of houses for dwelling or business, or both, in the country, whether incorporated or unincorporated, yet as used in a law requiring railroad companies to have stations at all villages, it will be held to apply exclusively to incorporated villages. State v. Minneapolis & St. L. R. Co., 76 Minn. 469, 79 N. W. 510.

Unless the context shows that another sense is intended, the word "village" shall mean an incorporated village. Bates' Annotated Statutes Ohio 1904, § 1536—907. To the same effect is Comp. Laws Mich. 1897, § 2935. The term "village" means an incorporated village, Laws N. Y. 1892, c. 677, § 22.

The terms "town" and "village" are within the meaning of the law synonymous. Held by a number of cases cited at page 7323, Words and Phrases, First Series, while on the next page of the same authority are a number of decisions holding to the contrary. A place which was not incorporated, but which had a post office, store, residence, sawmill, and another building in course of construction was a village, within a statute authorizing the removal of a county site to any village. Commissioners v. State, 151 Ala. 561, 44 South. 465. Where the owner of farm lands plotted it into lots, blocks, and streets, filing the plot with the county clerk, but there was no acceptance of dedication, no incorporation, and no buildings, but a post office, the land did not become a town or village, limiting the homestead therein to one character. Clements v. Crawford, 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149. The word "village" always carries to the mind the idea of a small urban community; a city is a town, and a village is a town, but the word "city" or "village" indicates the size of the town. State v. Lichte, 226 Mo. 273, 126 S. W. 466.

The record shows in this case that the entire county of Kaufman is heavily populated or settled; but to hold that a community, such as the record discloses in this case, is a "town," within the meaning of the constitutional provision under consideration, would eventually mean that there can be no rural homesteads in Texas, because the people of the country are as gregarious as the people of the city, and they naturally place their residences and accompanying outbuildings at such corners or places on their farms as will touch the public roads and be nearer their neighbors.

I therefore hold that the exception of the bankrupt to the finding of the trustee that the bankrupt's residence was urban, and that his busi-

ness was conducted in such town or village, and that therefore he could not have the rural homestead, was error, and that the referee should have found as requested by the bankrupt, that the entire six tracts were but separate tracts, the aggregate of which was less than 200 acres, of the rural homestead of the bankrupt used in connection with the family residence, "for the support, comfort, and convenience of the family."

I further find that said six tracts are exempt to the bankrupt, and should be set aside as such by the trustee, and an order in accordance herewith shall be drawn.